## Murawski et ux. v. Kurlancheek et ux. et al.

*Leo W. White* and *Vincent M. Quinn*, for plaintiffs.
*J. Mitchell Jenkins* and *Herman E. Cardoni*, for defendants.

4

PINOLA, J., February 20, 1951.—This is an action brought by plaintiffs, who own a property the rear of which abuts on Lincoln Alley, in Duryea Borough, to restrain defendants, two of whom own properties abutting on said alley, from using that portion of the alley in rear of plaintiffs' premises.

The common owner of the properties involved conveyed lots as bounded by "Lincoln Alley" or a "20 foot alley." Plaintiffs claim to have exclusively used that portion of the alley in the rear of their lot for over 20 years, that defendants are now estopped to assert their right to the use of the alley, and that they have abandoned that right.

Defendants contend that plaintiffs have not used the alley exclusively at any time, that there can be no estoppel in this case and that they have not abandoned their right to use the alley.

The pleadings raise but one issue: Are plaintiffs entitled to enjoin the use of the alley by defendants?

From a careful consideration of all the testimony, we make the following

### Findings of Fact

1. On March 25, 1868, Thomas Benedict became the owner of a large piece of land along what is now Main Street, Duryea Borough, extending from the Pettebone tract on the west in an easterly direction to Stephenson Street. We will refer to this as the Benedict tract.

2. Upon his death, testate, on September 11, 1880, Thomas Benedict devised the property to his six daughters, Christina Benedict Carter, Ella Benedict, Charlotte Benedict, Grace Benedict Dobbie, Rosa Benedict Richards, and Sarah Benedict Collum, whom we designate the Benedict heirs.

3. The Benedict heirs sold many lots from the Benedict tract and in the deeds therefor they designated either the northerly or the southerly boundary of said

lots as on "Lincoln Alley" or "20 foot alley." In one deed it was designated "Lincoln Street."

4. The parcels of land designated nos. 1, 2, 3A, 3B and 4 on the plot attached to the complaint were part of the Benedict tract.

5. It was the intention of the Benedict heirs in selling the lots that the alley referred to in the deeds was to extend from the westerly boundary of the Benedict tract in an easterly direction parallel to Main Street to Stephenson Street and was to furnish means of ingress and egress to the lots. This alley would be the only means of access available to the lots located south of the alley.

6. The Benedict heirs by deed dated September 16, 1916, conveyed to Jacob F. McCullon and Frances H. McCullon, his wife, the lot of land now improved with building known as No. 248 Main Street, this lot being 50 feet in front on the north or Main Street side, and running south a depth of 120 feet; and in their deed described the parcel's rear or south boundary as extending along "Lincoln Alley in a northeasterly direction 50 feet to a corner. . . ."

7. By deed dated July 2, 1928, Jacob F. McCullon and wife conveyed their unimproved lot to plaintiffs, Joseph Murawski and Mary Murawski, the deed being recorded in Deed Book 675, at page 175, and the property being described as follows:

"Beginning on Main Street on a corner of land owned by Jacob F. McCullon, et ux. and containing a dwelling now owned by Christina Carter and extending fifty (50) feet in a southwesterly direction; thence in a southeasterly direction one hundred twenty (120) feet to a corner on Lincoln Alley; thence along said Lincoln Alley in a northeasterly direction fifty (50) feet to a corner of land owned by said Jacob F. McCullon et ux.; thence in a northwesterly direction one hundred twenty (120) feet to the place of begin-

6

ning. Containing six thousand (6,000) square feet of land."

Said parcel is designated parcel 1 on the map attached to plaintiffs' complaint.

8. The Benedict heirs by deed dated May 21, 1921, conveyed to Daniel McArdle the lot of land adjoining on the west, now improved by what is known as 246 Main Street, this lot being 40 feet in front, 120 feet in depth along the McCullon or eastern boundary, and 115 feet in depth along its western boundary, which deed described the rear or southern boundary as extending along "Lincoln Alley thirty-one (31) feet more or less."

9. James McArdle and others, being the devisees of Daniel McArdle, conveyed that lot to Sadie Kurlancheek by deed dated July 2, 1937, and recorded in Deed Book 763, at page 437. The property is therein described as follows:

"Beginning at a corner on Main Street and land now or formerly owned by Jacob McCullon; thence extending along said Main Street in a southwesterly direction forty (40) feet to a corner of land now or formerly owned by Christina Carter, et al.; thence running along said land now or formerly owned by Christina Carter et al., in a southerly direction one hundred fifteen (115) feet more or less to a corner of land now or formerly of Stephen S. Spruks; thence running along said land now or formerly of S. Spruks, fourteen (14) feet in an easterly direction to a corner on said land now or formerly of S. Spruks and Lincoln Alley; thence extending along said Lincoln Alley thirty-one (31) feet more or less to a corner on land now or formerly of Jacob McCullon and northerly side of said alley; thence running along said land now or formerly of Jacob McCullon in a northerly direction one hundred twenty (120) feet to the place of beginning."

This property is designated parcel 2 on the map attached to the complaint.

10. Until 1931 the Benedict heirs owned the lot of land adjoining the Murawski lot on the east improved with building known as No. 250 Main Street, and one of their number, Christina Benedict Carter, resided in the house thereon.

11. The Benedict heirs by deed dated April 23, 1931, conveyed that property, 250 Main Street, to Anthony Hantz, Sr.

12. Anthony Hantz and wife conveyed the property described in finding 11 to Adam Piekarski and wife by deed dated April 30, 1932, and recorded in Deed Book 716, page 276. The property is therein described as follows:

"The first thereof: Beginning at a corner on the easterly side of Main Street, said corner being 267 feet in the direction of North 70 degrees 45 minutes East from the intersection of the easterly line of Main Street with the line between certified Lots Nos. 39 and 40, said corner being also in line of Jarosavage; thence South 19 degrees 3 minutes East 120 feet to a corner on a 20 foot alley; thence South 70 degrees 45 minutes West 57 feet to a corner; thence North 19 degrees 3 minutes West 120 feet to a corner on Main Street; and thence along Main Street North 70 degrees 45 minutes East 57 feet to the place of beginning. Containing 6,840 square feet of land more or less.

"The second thereof: Beginning at a corner in the southerly line of lands of Jarosavage, said corner being 140 feet in the direction of South 19 degrees, 3 minutes East from the easterly side of Main Street; thence South 19 degrees 3 minutes East 116.2 feet to a corner in the westerly right of way line of the D. L. & W. R. R. Co.; thence along said westerly right of way line in a southwesterly direction 77 feet to a corner in line of lands now or late of Stephen Sprucks;

thence along said Sprucks land North 8 degrees 30 minutes West 114.7 feet to a corner on the easterly side of a 20 foot alley; and thence along said 20 foot alley North 70 degrees 45 minutes East 132.1 feet to the place of beginning. Containing 12,420 square feet of land."

These properties are designated parcel 3 and parcel 4 on the map attached to the complaint and are on opposite sides of Lincoln Alley.

13. By deed dated December 11, 1945, and recorded in Deed Book 868, page 334, Adam Piekarski and wife conveyed to Sadie Kurlancheek part of parcel 3, designated 3A on the plot attached to the complaint, this lot being described as follows:

"Beginning at a point in an alley, which point is 140 feet distance from the easterly side of Main Street measured along the southerly line of land of Adam Piekarski and wife, and thence in the same direction South 19 degrees 3 minutes East for a distance of approximately 104 feet to a point in the westerly right of way line of the Delaware, Lackawanna and Western Railroad Company; thence southwesterly along this same right of way line for a distance of approximately 20 feet to a point in line of lands now or lately of Stephen Sprucks; thence along line of lands of said Stephen Sprucks North 48 degrees 30 minutes West for a distance of 114.7 feet to another point in the fore-mentioned alley; thence North 70 degrees 45 minutes along easterly boundary of said alley for a distance of 75.1 feet to the point of beginning."

14. Adam Piekarski and wife conveyed to Jacob Kurlancheek, by deed dated July 1, 1948, and recorded in Deed Book 990, at page 161, parcels designated parcel 4 and parcel 3B on the map attached to the complaint, and described as follows:

"The first thereof: Beginning at a corner on the easterly side of Main Street, said corner being two

hundred and sixty-seven (267) feet in the direction of North 70 degrees 45 minutes East from the intersection of the easterly line of Main Street with the line between certified lots Nos. 39 and 40, said corner being also in line of lands of Jarosavage; thence South 19 degrees 3 minutes East one hundred and twenty (120) feet to a corner on a twenty (20) foot alley; thence South 70 degrees 45 minutes West, fifty-seven (57) feet to a corner; thence North 19 degrees 3 minutes West, one hundred and twenty (120) feet to a corner on Main Street; and thence along Main Street North 70 degrees 45 minutes East, fifty-seven (57) feet to the place of beginning.

"The second thereof: Beginning at a corner in the southerly line of lands of Jarosavage, said corner being one hundred and forty (140) feet in the direction of South 19 degrees 3 minutes East from the easterly side of Main Street; thence South 19 degrees 3 minutes East, one hundred and sixteen and two-tenths (116.2) feet to a corner in the westerly right of way line of Delaware, Lackawanna and Western Railroad Company; thence along said westerly right of way line, in a southwesterly direction approximately fifty-seven (57) feet to a corner in line of lands now or late of Sadie Kurlancheek; thence along Kurlancheek's land North 19 degrees 3 minutes West one hundred and four (104) feet to a corner on the easterly side of a twenty (20) foot alley; and thence along said twenty (20) foot alley North 70 degrees 45 minutes East fifty-seven (57) feet to the place of beginning.

"Under and subject to any and all conditions, reservations, covenants, restrictions and agreements contained in the chain of title."

15. Adjoining the premises of Sadie Kurlancheek, 246 Main Street, on the west, there is a triangular piece of ground facing Main Street for a width of

approximately 60 feet, none of which abuts on Lincoln Alley. It is owned by Benjamin Kurlancheek and Eli Kurlancheek, who have added thereto certain other property in order to square the lots. On these lots they have erected dwellings known as 244 and 242 Main Street, which are by them respectively.

16. After purchasing parcel 1 on July 2, 1928, plaintiffs immediately commenced the construction of a dwelling house and a three-car garage thereon; they moved into the completed house on December 20, 1928, and have continuously occupied the premises since that date. The garage is built within the lines of the lot, and besides double doors facing Main Street it has double doors in the rear thereof, which when open, project into Lincoln Alley.

17. At the time of their purchase, on July 2, 1928, of the land designated parcel 1, plaintiffs not only had notice from their deed of the existence of Lincoln Alley, but they also had full and actual knowledge of the same.

18. At the time of their purchase, on July 2, 1928, of the land designated parcel 1, plaintiffs had actual and constructive notice that the Benedict heirs intended that the part of Lincoln Alley immediately in rear of their lot was to be used by the owners of all lots abutting on the alley.

19. At no time prior to July 2, 1928, did plaintiffs' predecessors in title, Jacob F. McCullon and wife, claim any title to or exercise any dominion over, that portion of Lincoln Alley lying in rear of parcel 1.

20. By their deed of July 2, 1928, plaintiffs' predecessors in title made no attempt to convey to plaintiffs any right, title or interest in the portion of Lincoln Alley lying in rear of parcel 1, the deed purporting to convey only the piece of land designated as parcel 1.

21. Plaintiffs used the dirt excavated from the cellar to level off that portion of Lincoln Alley immediately in rear of their property during the construction of their home in 1928.

22. There was constructed in 1941 a large warehouse and garage on the land of Benjamin Kurlancheek and Eli Kurlancheek adjoining parcel 3A on the west. These buildings were used in conjunction with the conduct of a furniture business.

23. Defendants, Sadie Kurlancheek and Jacob Kurlancheek, purchased parcels 3A and 3B respectively, both located on the southerly side of Lincoln Alley, and Sadie Kurlancheek built on parcel 3A a warehouse, 50 feet wide and 157 feet deep, costing approximately $10,000, relying on the easement in Lincoln Alley and particularly of that part in rear of parcel 1, without which, these parcels and the warehouse thereon cannot be used.

24. In order to construct this warehouse, Sadie Kurlancheek removed a fence along Lincoln Alley in front of parcel 3A, which had been constructed by Adam Piekarski in 1939.

25. Since the beginning of construction of the warehouse on parcel 3A in 1946 that portion of Lincoln Alley in rear of parcel 1 has been used, though not for its entire width, continuously by the contractor erecting the warehouse and his employes, by persons having business with defendants, by trucks making deliveries to the warehouse, by defendants themselves and by their employes as a means of access to the warehouse. They have passed over it in going to Main Street by way of the driveway on parcel 2, and since January 6, 1948, they have passed over it in going to Main Street by way of the driveway on parcel 4 as well.

In backing the trucks against the warehouse for loading and unloading, some of the trucks necessarily

parked on the alley in rear of parcel 1 and the front of the same would stand within from 3 to 10 feet from the garage on parcel 1.

26. Trucks of the type making deliveries to defendants' warehouse on parcel 3A, cannot discharge their cargoes at the warehouse without making use in part of the portion of Lincoln Alley in the rear of parcel 1.

27. To the construction of the warehouse and to the use of the alley set forth in finding 25, plaintiffs made no objection prior to January 6, 1948.

28. There is no access on the inside to the warehouse from the other warehouse owned by Benjamin Kurlancheek and Eli Kurlancheek and constructed on land adjacent to parcel 3A, nor is any use made of the warehouse on parcel 3A in connection with the other warehouse.

29. The use made by defendants of Lincoln Alley, as set forth in finding 25, has been at all times under claim of right.

30. In 1939 Adam Piekarski erected a high fence on the four sides of parcel 3A, one side of which fence ran along the southerly line of Lincoln Alley in the rear of the Murawski and Sadie Kurlancheek properties.

31. Adam Piekarski did not construct any fence along the alley bounding the southerly side of parcel 4 or the northerly side of parcel 3B.

32. There is a private driveway, located partly on the westerly side of the property of Sadie Kurlancheek at 246 Main Street and partly on the easterly side of adjoining property of Benjamin Kurlancheek at 244 Main Street, which leads back from Main Street across the Lincoln Alley area in the rear of Sadie Kurlancheek's property, to both the old and new warehouses and the garage. The property owned by Benjamin Kurlancheek and known as 244 Main Street does not

abut on Lincoln Alley, nor does the property known as 242 Main Street, owned by Eli Kurlancheek.

33. In the year 1942, defendant Jacob Kurlancheek rented from its then owner, Adam Piekarski, one of the two garages located on parcel 3B.

34. A private driveway was and still is located on the Kurlancheek property at 250 Main Street (parcel 4), formerly Piekarski, opening on Main Street and leading back therefrom towards the rear of the property and along its west boundary.

35. Defendants' engineer insists that the southerly boundary of their lot is three feet south of the boundary as fixed by plaintiffs' engineer. On that basis, the planting of tomatoes and other vegetables by defendants was on the lot proper and not in the alley. Even though in the alley, the planting did not interfere with its use.

36. Prior to January 6, 1948, plaintiffs made no claim of legal title to the portion of Lincoln Alley in rear of their lot, parcel 1.

37. Prior to January 6, 1948, plaintiffs made no claim of right to the exclusive possession of that portion of Lincoln Alley in rear of their lot, parcel 1.

38. Beginning in 1948, defendants, over the objections of plaintiffs, have been using both of the private driveways referred to in findings 32 and 34, in going to and from the old and new warehouses and garage, and to the properties 242, 244, 246 and 250 Main Street, and in so doing have been passing over the alley at the rear of the plaintiffs' property.

39. During the period from 1928 to 1948, plaintiffs did from time to time plant flowers, trees, hedges and shrubbery upon parts of the alley immediately in the rear of their property. Then sometime prior to 1945, and probably about 1938, they planted grass across the entire alleyway. They did not exclusively use the alley in its entirety at any time during that period.

40. Although plaintiffs planted flowers and shrubbery along the southerly side of their garage abutting on Lincoln Alley and grass over all of it for a time, they did not, prior to January 6, 1948, claim any title to Lincoln Alley or attempt to exercise dominon over it to the exclusion of others using it and having a right to use it.

41. On January 6, 1948, defendant Adam Piekarski, who was then employed by Jacob Kurlancheek, while plaintiffs were attending a funeral, cut down some shrubbery and a tree which had been planted by plaintiffs in the alley in the rear of their property.

42. Defendant Jacob Kurlancheek and other persons walked upon and across the alley immediately in the rear of plaintiffs' property from time to time, from 1938 to 1948.

43. Shortly after Sadie Kurlancheek purchased parcel 2, plaintiff Mary Murawski told her that Mrs. Carter, one of the Benedict heirs, had said: "This alley was never opened, never used and will never be opened." To which Sadie Kurlancheek replied: "Is that so? That would be a question."

44. Plaintiffs acquired from the Benedict heirs, by quitclaim deed dated February 26, 1949,. recorded on March 1, 1949, in Deed Book 1020, at page 589, the bed of that part of Lincoln Alley immediately in rear of parcel 1: "Under and subject to any and all conditions, reservations, covenants, restrictions and agreements contained in the chain of title."

45. Except for the designation and reference to "Lincoln Street," "Lincoln Alley," and a "20 foot alley" in the various deeds from the Benedict heirs, Lincoln Alley was never fully opened or laid out on the ground, nor was it ever fully used by any one, nor was it accepted by the Borough of Duryea as a public way.

46. In 1937 trucks drove in and upon the alley immediately in the rear of plaintiffs' property for the purpose of depositing soil derived from a WPA project in order to fill certain low spots.

47. In 1937 trucks traveled upon the alleyway in rear of property, parcel 4, in order to deposit 141 truck loads of soil derived from the same WPA project to level off a swampy area.

48. The Kurlancheeks have used only that portion of Lincoln Alley immediately in the rear of parcel 2, parcel 1, and parcel 4. They have not attempted to use any part of Lincoln Alley east of parcel 4.

49. Plaintiffs' property, with the exclusive use of the alley in the immediate rear thereof, improved with grass, shrubbery, etc., had a market value of $22,000. After the cutting of the shrubs, etc., and with the alley subject to use by defendants and others it only had a market value of $20,000, so that the damages, if any are recoverable, amount to $2,000.

50. Sadie Kurlancheek at no time abandoned her rights in Lincoln Alley which are appurtenant to parcel 2 and parcel 3A.

51. Jacob Kurlancheek at no time abandoned his rights in Lincoln Alley which are appurtenant to parcel 4 and parcel 3B.

52. When plaintiffs spent time, money and labor upon part of Lincoln Alley immediately in the rear of parcel 1, planting shrubbery, etc., on the same, they knew of the rights of Sadie Kurlancheek and of the rights of all other owners of lots abutting on Lincoln Alley to use the alley.

53. When plaintiffs spent money and performed labor on the portion of the alley in rear of their property, they did so in reliance upon the assurance of Mrs. Carter, one of the Benedict heirs, that the alley would never be opened up.

54. After purchasing parcel 2, Sadie Kurlancheek planted some tomatoes and other vegetables upon the same and along the alley boundary line. She also erected a railroad tie in the bed of the alley about three feet from its southerly boundary to which she attached a clothes line. Neither planting nor pole interfered with the use of the alley.

## Discussion

Throughout this consideration we must keep in mind that the rights of Sadie Kurlancheek arise from her purchase of two properties, the first in 1937 from James McArdle and others, and the second in 1945 from Adam Piekarski and wife. The first adjoins the property of plaintiffs on the west and the second is directly in the rear of the property of plaintiffs on the other side of Lincoln Alley. We must remember that Jacob Kurlancheek acquired separate and independent rights in the alley by his purchase from Adam Piekarski and wife in July 1948 of two properties, the front one adjoining that of plaintiffs on the east and the other being in the rear thereof and directly across Lincoln Alley. We must also remember that nothing that was done by Sadie Kurlancheek between 1937 and 1948 could in any way affect the rights of Jacob Kurlancheek.

While defendants contend that the sale of all the lots by the Benedict heirs with the alley as a boundary constitutes a dedication of the alley to public use, since the use made of it by them is limited, they do not press their right to have the alley opened to the public.

Plaintiffs' contention that such right is gone because the borough did not open the alley within 21 years from 1916, when the first deed was executed by the Benedict heirs, may or may not be a valid one. While, as they point out, the Borough Code of May 14, 1915, P. L. 312, and the Borough Code of May 4,

1927, P. L. 519, sec. 1631, 53 PS §13622, did declare that:

"Whenever any street, lane, or alley shall be laid out by any person, and has not been opened to, or used by, the public for twenty-one years, such streets, lanes, or alleys shall not thereafter be opened without the consent of the owners of the land on which the same has been so laid out . . ."

that provision was amended by the Act of 1947, P. L. 1621, sec. 46, by striking out the words "lane or alley" from the first line, and the words "lanes or alleys" from the third line. Therefore it now applies only to streets.

So far as this case is concerned, it is not important that the alley was never accepted by the municipality. Here we have a suit between private parties claiming under the same predecessors in title who, as we have seen, created the alley in question when they conveyed the lots on both sides of it, at least as an easement for the benefit of the owners of the several lots.

Defendants, Jacob Kurlancheek and Sadie Kurlancheek stand on private contract rights which they acquired through three separate deeds.

It is well settled that the designation in a deed of a street or alley as a boundary, either opened or not, if it be on ground of the grantor, is an implied covenant by the grantor that it shall be open for the use of the grantees as a public way, and is also a dedication to public use. Such designation operates as an equitable grant of a right of way over such street or alley and creates an easement in favor of the grantee and his successors in title not only against the original grantor but as against any subsequent grantees.

The conveyances from the Benedict heirs with reference to Lincoln Alley constituted a dedication of that alley as a means of egress and ingress for the benefit of all the owners of lots abutting thereon and gave rise

to an easement of access, as a matter of contract. These rights acquired by the Kurlancheeks are entitled to protection, unless in some legally recognized way the easement has been surrendered or extinguished: Dulany et al. v. Bishoff et al., 165 Pa. Superior Ct. 207.

While plaintiffs set up a claim based on adverse possession of that part of the alley in the rear of their property jointly with their predecessors, Jacob McCullon and wife, for 21 years, at trial they failed to prove that averment. So, to defeat the rights of Jacob Kurlancheek and Sadie Kurlancheek, they claim (1) that defendants are estopped to assert their right to the easement by reason of acquiescence, and (2) that in conjunction with acts of defendants their acquiescence has worked an abandonment of the easement.

Taking up estoppel, let us first consider the position of Jacob Kurlancheek. At the time the tree and branches were cut on January 6, 1948, which cutting led to the breach in the relations between the parties, he had not yet purchased parcels 4 and 3B. These he acquired in July of that year. Since he had no easement at the time of the acts done by plaintiffs, certainly he cannot be said to have acquiesced in them.

Moreover, from the time Jacob Kurlancheek acquired his rights in July 1948 he has been exercising those very rights which he has in the alley by going over the property in the rear of plaintiffs with trucks, automobiles, and on foot, and since that time plaintiffs have not performed any acts which could be the basis of any estoppel as to him.

Now what of the rights of Sadie Kurlancheek? She bought the first property in 1937, but the second she did not acquire until 1945. As to the easement appurtenant to the second property, how can she be said to have acquiesced in those acts which plaintiffs performed prior to December 11, 1945? By that time, according to plaintiffs' testimony and their photo-

graphs, the alley had been completely sown with grass and planted with trees and shrubbery.

Her counsel insist that plaintiffs should be estopped to claim any exclusive right to the alley in rear of their property because they stood by and watched her expend $10,000 in the construction of a large warehouse 50 feet wide and 157 feet long on parcel 3A in 1946. They urge that Mrs. Murawski admitted that she saw trucks delivering merchandise to that warehouse which, in order to do so, went upon part of the alley in the rear of her home.

We need not pass upon this contention because it is clear to us that there is no basis for estoppel against either easement owned by Sadie Kurlancheek.

With reference to plaintiffs' claim of estoppel against the easement in connection with parcel 2, plaintiffs' counsel have argued extensively, quoting and paraphrasing A. L. I. Restatement of the Law of Property, §505.

None of it, however, is applicable. It provides (p. 3082):

"An easement is extinguished when action is *taken by the owner of the servient tenement* inconsistent with the continued existence of the easement, if

(a) such action is taken in reasonable *reliance upon conduct of the owner of the easement;* and

(b) the owner of the easement might reasonably have foreseen such reliance and the consequent action; and

(c) the restoration of the privilege of use authorized by the easement would cause unreasonable harm *to the owner of the servient tenement.*"

In Comment, page 3083, we find the following:

"It is not essential that the owner of the easement shall have made, intentionally or otherwise, any misstatement of fact. It is necessary only that he shall have led, . . . the owner of the *servient tenement*

into some action inconsistent with the continued existence of the easement, such action being taken under the reasonable belief that it was not inconsistent with any claim of a privilege to use which would thereafter be made under the easement."

Again, on page 3084, we find:

"If the owner of an easement acts as though he has no intention to make in the future the use authorized by the easement, he may become estopped to make such a use if the *owner of the servient tenement* acts in reliance upon the intention indicated."

Also, page 3084:

"To extinguish an easement by estoppel action must be taken by *the owner of the servient tenement* inconsistent with the privileges of use authorized by the easement."

Throughout the section and all the comments under it, the action taken is "by the owner of the servient tenement."

The cases cited by plaintiffs' counsel all arise between the owner of the dominant tenement and the owner of the servient tenement, except one, and that is between a grantor and a grantee.

They have cited no case in our State, nor have we been able to find one, wherein an easement has been extinguished by estoppel in favor of the owner of another dominant tenement, one who has the very same right which comes from a common source.

It is our judgment that the acts must have been performed by one who owned the servient tenement at the time they were performed, and therefore, it is immaterial that plaintiffs acquired by quitclaim deed in July 1949 the rights to the bed of that part of the alley in the rear of their lot.

However, assuming that estoppel does operate in favor of the owner of another dominant tenement, what are the facts on which plaintiffs base their claim?

What is the conduct of the owners of the easement on which plaintiffs relied? Two acts done by Sadie Kurlancheek at a time when she owned parcel 2, namely, planting some vegetables upon part of the alley in the rear of her property and erecting a clothes line pole two or three feet from the boundary of the alley, neither of which acts interfered with the use of the alley in front of her property. These plaintiffs couple with her alleged silence when she saw plaintiffs plant grass upon the entire width of the alleyway and plant some trees and shrubs therein as well.

What plaintiffs did was not a permanent interference with the use of the alley. After the initial cost, only labor for maintenance was involved. Moreover, there is no averment and no proof that this expenditure of money and performance of labor was made in reliance on any act or declaration on the part of Sadie Kurlancheek. Quite to the contrary, plaintiffs themselves proved that they did all this work relying upon assurances of Mrs. Carter, one of the Benedict heirs, and McArdle, predecessor in title of Sadie Kurlancheek. At trial, although not averred in the bill, and therefore not competent as a basis for an estoppel against Sadie Kurlancheek, plaintiffs claimed they expended the money and performed the labor relying on the assurance in 1928 (before the house and the garage were built) by Mrs. Carter that the alley would never be opened. This information, Mrs. Murawski said she conveyed to Sadie Kurlancheek in 1937, when she acquired the McArdle property. Mrs. Murawski testified:

"Mrs. Carter told me that this was supposed to be an alley a long time ago but that it wasn't opened, never used and that it never would be opened or used."

Whereupon, Mrs. Kurlancheek, according to her, replied:

"Is that so?"

Mrs. Murawski then said:

"Yes."

The conversation ended with Mrs. Kurlancheek saying:

"That would be a question."

Clearly this conversation cannot be the basis of any estoppel against Mrs. Kurlancheek. She expressed surprise and doubt. She did not acquiesce. But it gives us clearly the reason for the improvement of the alley by plaintiffs.

If plaintiffs planted the area on the assurance of Mrs. Carter, how can they claim that such action operates as an estoppel against defendants?

Of course, we could not believe that testimony. In the first place, had the borough chosen to do so, it could have compelled the opening of the alley at that time as the 21 years had not elapsed. On the other hand, why would Mrs. Carter make such a statement in 1928 when she still owned lots abutting on the alley which were for sale? If she made that statement and it was true, why did she join with her sisters in the deed dated April 23, 1931, conveying properties to Adam Piekarski? They sold two lots to him and referred to the alley as the boundary of each lot.

Plaintiffs also claim that Mrs. Carter declared that the alley belonged to them and that they owned 140 feet instead of 120, as called for by the deed. How could she, only one of the heirs and verbally, at that, give title to the whole 20 feet of the alley to plaintiffs? One of the lots sold to Adam Piekarski abuts the alley on the southerly side directly in rear of plaintiffs. Did no part of the title accrue to him? If Mrs. Carter made the statements attributed to her and if Mrs. Murawski and her husband relied upon those statements, why did not plaintiffs build the garage at the very end or southerly side of the alley, instead of along the northerly side of the alley? And why did they place two

large doors in the rear of the garage opening directly on the alley? And, if they acted on the assurance of Mrs. Carter, why did they not extend the hedges along the side of the lot to the southerly side of the alley, instead of stopping at the northerly side?

Even if believed, those statements were not competent as declarations against interest because Mrs. Carter had at that time parted with her interest in the lot acquired by Sadie Kurlancheek. She had sold it in 1921 to Daniel McArdle. So, no statement by her at that time could possibly bind Daniel McArdle or Sadie Kurlancheek. And, since she owned other lots along the alley, the statements would not be declarations against interest; rather they would be self-serving declarations and statements enlarging her interest in the other lots which she still owned.

Furthermore, those statements were not competent on any other ground because Mrs. Carter could not by parol declarations controvert the legal effect of her deeds nor could she in any way abridge the rights which the purchasers had acquired under them: Vinso v. Mingo, 162 Pa. Superior Ct. 285; Patterson v. Harlan, 124 Pa. Superior Ct. 67, 74; Gailey et al. v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381, 385; Snyder et al. v. Commonwealth, 353 Pa. 504, 508.

In any event, no estoppel can possibly arise against Sadie Kurlancheek in this case because whatever money was spent and labor performed in connection with beautifying the alleyway was made and done by plaintiffs with full knowledge that the alleyway was subject to the right not only of Sadie Kurlancheek but every other owner of a lot abutting on the alley to pass over and along the alley in the rear of their property.

The deeds to the properties are derived from a common source. The property of plaintiffs, and the property of defendants, carry the same easement. So,

plaintiffs had constructive notice through the deeds. In addition, from the evidence it definitely appears that Mrs. Murawski had actual notice. She testified to a conversation with reference to the alley with Mrs. Carter shortly after the commencement of the digging of the cellar on plaintiffs' property in the summer of 1928. And she admitted, on cross-examination, that she knew of the alley when she and her husband bought their property. Such being the case, no estoppel can arise because at a very early date, Justice Strong declared in Hill et al. v. Epley et al., 31 Pa. 331:

"If . . . the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel."

And, in Ormsby et al. v. Ihmsen, 34 Pa. 462, the same justice declared:

"If the truth was known to both parties, there was no estoppel . . . for it is essential to such an estoppel, that the party who asserts it has been misled, and he cannot be misled by a statement, the falsity of which he knows."

In Woods v. Wilson, 37 Pa. 379, the court declared that silence will not postpone a title when a party who is himself aware of the title seeks to postpone it on the ground of silence, and that when both parties are aware of their respective rights it (the doctrine of estoppel) has no place in law or equity.

These principles have been repeated many times by our Supreme Court.

In Garvey v. Harbison-Walker Refractories Company, 213 Pa. 177, where defendant had bought all the lots on a plot except those of plaintiff and then built a kiln and a machine shop on one of the streets, the court held:

"The deeds in its chain of title gave it notice of the streets and of their location, and there was nothing to justify the belief that in obstructing the streets and

alleys it was not invading a public or private right. The silence of the *plaintiff or of his predecessors in title,* therefore, under the record facts in this case, will not work an estoppel: (cases) 'If the truth be known to both parties, or if they have equal means of knowledge,' says Strong, J., in Hill v. Epley, 'there can be no estoppel.' " (Italics supplied.)

In Northwestern National Bank v. Commonwealth, 345 Pa. 192, the court referred to Hill et al. v. Epley et al., 31 Pa. 331, 334, quoting language above, and added:

" ' . . . one is not relieved, who had the means of becoming acquainted with the extent of his rights: . . . It should never be forgotten, that there is a wide difference between silence and encouragement.' "

The general principle is stated thus in 31 C. J. S. 272, §71:

"There can be no equitable estoppel short of one arising from actual contract where the truth is known to both parties or where they both have equal means of knowledge." (Note 98. Many cases cited, including Culbertson, Receiver, v. Cook et al., 308 Pa. 557, and Groner et al. v. Keith, 21 D. & C. 347).

Another court in applying these principles has stated the proposition so clearly that we quote from its decision. In Schaidt v. Blaul, 66 Md. 141, 6 Atl. 669, 672, a ground of defense set up in the answer was that complainant well knew that defendant was building the wall in question, and made no objection to it, but stood by and acquiesced in the expenditure of large sums of money by defendant in the construction of it without a complaint of any character until after it was completed. Thereupon it was maintained that complainant was estopped to allege that the erection of the wall was in violation of his rights. The court said:

"No doubt there are many cases where the conscience of a party is bound by an equitable estoppel; and rights may be forfeited by such conduct as would make it against conscience to assert them. Where a man knowingly suffers another to *make expenditures* on land *under an erroneous opinion of his title,* and does not make his own claim known, just considerations require that he shall not be permitted to assert his legal rights to the prejudice of the person whom his silence has misled. This doctrine has it natural limitations. Without expending this inquiry we shall content ourselves with a quotation from a decision of this court:

" '*The doctrine* that where one stands by and sees another laying out money on property, to which he himself has some claim or title, and does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim or title, *does not apply to an act of encroachment on land, the title to which is equally well known, or equally open to the notice of both parties;* but the principle applies only against one who claims under some trust, lien, or other right, not equally open and apparent to the parties, and in favor of one who would be misled or deceived by such want of notice.' Casey v. Inloes, 1 Gill. 502." (Italics supplied.)

On the basis of plaintiffs' equal knowledge, they are not entitled to prevent Sadie Kurlancheek from exercising her easement.

We conclude there is no estoppel against the right appurtenant to any one of the four parcels owned by either Jacob Kurlancheek or Sadie Kurlancheek.

In considering plaintiffs' claim that defendants have abandoned the easement, we must again remember (a) that there can be no abandonment by Jacob Kurlancheek of the right appurtenant to parcels 4 and 3B since the alley was admittedly used by all the Kurlancheeks when he acquired the properties in July

1948, and (b) that Sadie Kurlancheek likewise exercised the right appurtenant to parcel 3A within a very short time from its acquisition in 1945. There is no charge that she performed any acts on which it could be predicated after 1946 when she built the warehouse costing $10,000. Certainly the construction of so expensive a building, 50 feet wide and 157 feet long, with the necessary use of the alley in rear of plaintiffs' property indicated anything but an abandonment. So, we conclude that there was no abandonment of these two rights. That being the case, we could well end the discussion here because whether Sadie Kurlancheek exercises the easement by virtue of the ownership of parcel 2 or parcel 3A would not make much difference.

Dealing with the remaining easement, plaintiffs claim that there was an abandonment because (1) there was nonuser by Sadie Kurlancheek from 1937 to 1948; (2) defendants had used part of the alley in rear of their own property, and (3) Sadie Kurlancheek had acquiesced in the planting by plaintiffs in the alley in the rear of plaintiffs' property.

As with estoppel, we doubt whether plaintiffs can urge abandonment for reasons we set forth hereafter, but we will deal with the facts as if they have a right to do so.

Plaintiffs, no doubt, were aware of the decision in Smith v. Worn, 93 Cal. 206, 28 Pac. 944, involving the obstruction of a right of way. There the court said:

"An easement acquired by deed is not lost by mere non-user. 'It must be accompanied with the express or the implied intention of abandonment, and *the owner of the servient estate*, acting upon the intention of abandonment and the actual non-user, must have incurred expenses upon his own estate. The three elements, non-user, intention to abandon, and *damage to the owner of the servient estate*, must concur in

order to extinguish the easement.' (Tiedeman on Real Property, sec. 605.)"

We must bear in mind that when an easement is acquired by grant, it cannot be lost by nonuser: Dulany v. Bishoff, 165 Pa. Superior Ct. 207, 211. And this is true, "no matter what the duration of the non-user": Graham et ux. v. Safe Harbor Water Power Corporation, 315 Pa. 572.

It would seem, therefore, that where plaintiffs are not the owners of the servient tenement, they must show not only nonuser, but adverse possession for more than 21 years.

Plaintiffs did not prove the 11 years of nonuser. The alley was actually used by the husband of Sadie Kurlancheek and other persons in the neighborhood going across it on foot during the period from 1937 to 1948.

As for the acts of defendants, plaintiffs have simply averred that Sadie Kurlancheek planted some tomatoes in the alley directly in rear of her property, but there is no evidence that she planted the whole width or length of the alley. Defendants' witnesses testified that the tomatoes were planted between the hedge at the rear and the northerly boundary of the alley which was over three feet away. Furthermore, there is no evidence that what Sadie Kurlancheek did had interfered in any way with the use of the alley.

The situation here is similar to Illustration 8, A. L. I. Restatement of the Law of Property, page 3082:

"A owns a twenty-foot right of way over Whiteacre. Since he presently needs only ten feet, he plows up half of the area subject to the way and plants corn. A's conduct does not justify a finding of abandonment of any part of the way."

While there is no averment in the bill, there is proof that she erected a railroad tie about three feet from the southerly boundary of the alley for use as a clothes

line pole. It did not materially affect the use of the alley. These are the only two acts performed on which plaintiffs, who are not the owners of the servient tenement, rely as evidence of abandonment. In our opinion, they are insufficient.

In 1 Thompson on Real Property 751, the author declares, section 635:

"Mere non-user of an easement acquired by grant, however long continued, does not create an abandonment. This occurs only where in connection with non-user there is a denial of title, or some act by an adverse party, or attendant facts and circumstances showing an intention on the part of the owner of the easement to abandon it. And the mere fact that the non-user continues for the prescriptive period is immaterial, in the absence of any adverse acts on the part of the *servient owner*."

Again, on page 753, sec. 637, the author declares:

"In order to extinguish an easement created by grant, there must be some conduct on the part of the owner of the *servient estate* adverse to, and in defiance of, the easement, and the non-use must be the result of it, and must continue for the statutory period of limitation; or, to produce this effect, the non-use must originate in, or be accompanied by, some unequivocal acts of the owner inconsistent with the continued existence of the easement, and showing an intention on his part to abandon it; and the *owner of the servient estate* must have relied or acted upon such manifest intention to abandon the right, so that a subsequent assertion of it would work him injury."

9 Ruling Case Law 812 declares that:

"An easement may be abandoned by *unequivocal acts showing a clear intention to abandon* and terminate the right, or it may be done by acts in pais without deed or other writing. The intention to abandon is the material question . . . it is a question of

fact to be ascertained from all the circumstances of the case."

At page 813 it declares:

"The acts claimed to constitute the abandonment must show the destruction of the right, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing the intention permanently to abandon and to give up the easement. The burden of proof upon this issue is upon the party alleging it, and it must be established by evidence clear and unequivocal of acts decisive and conclusive. . . .

"The erection by the dominant owner of a construction which is incompatible with the exercise of the easement, is evidence of abandonment; but such an intention is not necessarily disclosed by a partial encroachment, or by a temporary obstruction which may be readily removed when it is desired to use the easement."

In 17 Am. Jur. 1027, §142, we find this language:

"The acts claimed to constitute the abandonment must show a destruction of the easement, impossibility of its legitimate use resulting from some act of the easement owner, or other unequivocal conduct revealing the intention permanently to abandon and surrender the easement. . . . The burden of proving the abandonment of an easement is upon the party alleging it. Moreover, the abandonment must be established by clear and unequivocal evidence of decisive and conclusive acts."

In Ermentrout v. Stitzel, 170 Pa. 540, at the time that a conveyance was accepted there was in the space covered by the alley an apple tree and grantee himself thereafter erected a grape arbor partly within the space covered by the alley. The court said (p. 544):

"There was no permanent or material encroachment upon the alley by the plaintiff or anything done or

omitted by him indicative of an intention to abandon it, or to deny to the defendant and the other lot owners the use of it for the purposes to which it was dedicated. The evidence in relation to the grape arbor and the apple tree did not show an obstruction which would have justified the defendant or any other lot owner in closing the alley. The former is the only obstruction placed in it by the plaintiff, and it affords no justification of or excuse for the act of the defendant."

American Law Institute Restatement of the Law of Property, illustration 5, page 3089, is in point:

"A, as the owner and possessor of Blackacre, owns an easement of way across Whiteacre. B, the owner and possessor of Whiteacre, cultivates and plants the land over which the way runs, thereby rendering its use impracticable. A sees B cultivate the land but makes no objection. A is not estopped to assert a claim to the use authorized by the easement. The restoration of the use would not cause unreasonable harm to B."

Plaintiffs, in our opinion, have not sustained their burden.

In passing we note that there is grave doubt in our mind as to the availability of abandonment to third persons or to the owner of a similar easement arising from the same source: Gardiner Lumber Co. v. Graves et al., 8 A. (2d) (R. I.) 864; Tietjen et al.v. Meldrim et al., 169 Ga. 678, 151 S. E. 349.

In 1 Thompson on Real Property 751, supra, we note that all acts referred to in connection with abandonment are the acts of the owner of the servient tenement. Here the acts relied upon were not those of the servient tenement.

Furthermore, we doubt whether one owner of an easement can abandon that easement in a situation like ours.

In McKee v. Perchment, 69 Pa. 342, where a fence ran through the alley and stables, coal houses and

privies had been erected and trees and bushes planted on the soil over which it would otherwise have run, the court said that the evidence was competent for plaintiff below to prove by the acts and declarations of different proprietors that the occupation and use of it were for temporary purposes only and not with any intention to abandon the easement. Justice Sharswood declared:

"Over these 12 feet (the alley in question) there was an express grant by him to each purchaser of an easement only. The principal defense set up on the trial was that the easement had been abandoned. It is plain that no one proprietor could do this. All the grantees of lots had an equal interest, and it required the concurrence of all."

And, in Ermentrout v. Stitzel, supra, where a tree was growing in the driveway and one of the parties erected a grape arbor, the court said the grape arbor placed in the alley by the plaintiff "affords no justification of or excuse for the act of the defendant" in closing the alley.

The court pointed out (p. 545):

"Besides, it is well to remember that the other lot owners have the same rights in the alley that the litigants have, and that the latter cannot exclude the former from it."

Also, in abandonment, the easement reverts back to the former owner and no rights accrue to the adjoining owners: Severo v. Pacheco et al., 75 Cal. App. 2d 30, 170 P. (2d) 40; Eureka Real Estate, etc., v. Southern Real Estate, etc., 355 Mo. 1199, 200 S. W. (2d) 328.

In 28 C. J. S. 723, it is stated:

"On abandonment of an easement, the right or interest which it involved vests in, or *reverts to*, the *owner of the servient estate;* but the owner of land adjoining a street does not acquire title to all the land

embraced in the street by reason of an abandonment of the street by other adjoining owners."

In Lindeman et al. v. Lindsey, 69 Pa. 93, 100, Justice Sharswood said:

"If the instrument contain the grant of an easement or privilege to either party in the land or the water, against such a grant there is no statute of limitation without actual hostile and adverse possession, and certainly no prescription or presumption from mere non-user. Nothing less than an absolute denial of the right, followed by an enjoyment inconsistent with its existence for a period of twenty-one years or more, can amount to an extinguishment of it."

And in Dulany et al. v. Bishoff et al., 165 Pa. Superior Ct. 207, 211, the court declared:

"It was incumbent upon the plaintiffs to show not only non-user, but adverse possession by themselves and their predecessors in title for more than twenty-one years."

All of these results suggest that third parties can only acquire rights by adverse possession and they can only defeat the rights of others by adverse possession: Citizens Electric Co. v. Davis, 44 Pa. Superior Ct. 138, 143.

We believe, too. that plaintiffs' case is not helped by their acquisition from the Benedict heirs of the title to the part of the bed of the alley in rear of their property by quitclaim deed dated February 28, 1949, and recorded on March 1, 1949, in Deed Book 1020, page 589. The conveyance is made specifically, "Under and subject to any and all conditions, reservations, covenants, restrictions and agreements contained in the chain of title." But even if that clause were not included, plaintiffs through it took title to the bed of the street as trustees for all the lot owners: Ulrich v. Grimes et al., 94 Pa. Superior Ct. 313.

Plaintiffs are entitled to relief as against any use of the alley for the benefit of properties not abutting upon it. They do have the right to complain of the use of the alley by the owner of parcel 5 on which are erected houses Nos. 242 and 244 Main Street, owned by Eli Kurlancheek and Benjamin Kurlancheek, sons of Jacob Kurlancheek and Sadie Kurlancheek. Though part of that parcel came from the Benedict tract, none of it is contiguous to Lincoln Alley. Therefore, the owners of it are not entitled to any use whatsoever of the alley for the benefit of their properties.

Defendants Jacob Kurlancheek and Sadie Kurlancheek have admitted that they have used the alley in order to go to the old warehouse and the garage, both of which are located on property which is not contiguous to the alley and which was at no time a part of the Benedict tract. To this extent this is an overburden on the easement which must be restrained: Percy A. Brown & Co. v. Raub et al., 357 Pa. 271.

We find no merit to plaintiffs' contention that because Jacob Kurlancheek and Sadie Kurlancheek do not exercise the easement to its full length from the Pettebone line on the west to either Lackawanna Street or Stephenson Street on the east, they are precluded from using any part of the alley and particularly that part in the rear of plaintiffs' property to go out to Main Street, either by the driveway on parcel 2 or by way of the driveway on parcel 4.

Of course, an easement cannot be used for a different purpose from that for which it was established. Mershon v. Fidelity Insurance, Trust and Safe Deposit Company, 208 Pa. 292, does not apply. In that case an adjoining owner was restrained from making an excavation in the alley for an areaway to obtain access to his building and to secure light and air for his basement. The court required the excavation to be solidly filled up and said (p. 295):

"The contestants are private property owners; the way is a private way; the permanence of the reservation has been impaired, and its uses have been enlarged, not to the advantage of all concerned, but of one party only, who thus grasps a right and benefit, that of light and air, not incident to his estate for his exclusive enjoyment, and at some risk to the others in ingress and egress. The defendants took no right under the grants . . . other than as expressly created by their deed, and without the assent of all interested in the easement they cannot alter the surface of the land for another use. This involves a trespass and an uncertainty as to future injury which equity will remedy."

In our case there is no change in purpose whatsoever; the alley is being used for the very purpose for which it was created, namely, as a driveway. Since the owner of an easement may abandon part of it, as well as all of it, we see no reason why defendants may not go over their own lot to Main Street instead of going all the way up the alley to Lackawanna Street.

Accordingly, it is unreasonable for plaintiffs to insist that before the owners may exercise their easement they must establish their present right over all other parts of the alley. It may well be that their rights as to some have been lost by adverse possession for more than 21 years.

In Dulany et al. v. Bishoff et al., 165 Pa. Superior Ct. 207, where the easement was over 190 feet, the court found the rights to 90 feet had been lost. In this case we are concerned only with the rights of Jacob Kurlancheek and Sadie Kurlancheek to go over the alley in rear of plaintiffs' property.

Plaintiffs did make a lovely garden spot of the alley in 1945 and perhaps it was in the same condition since 1937, when the filling was done. If so, it is all the more regrettable that they cannot continue to make

such use of the alley. However, since defendants Jacob Kurlancheek and Sadie Kurlancheek now assert their rights in the alley, we must accord to them the protection of those rights to which they are entitled under the law.

From the facts, we reach the following

*Conclusions of Law*

1. Since the deeds from the Benedict heirs for the properties now owned by plaintiffs, by Jacob Kurlancheek and by Sadie Kurlancheek call for an unopened alley as a boundary and the common grantors owned the fee in the alley, they are estopped as against grantees to deny that it is an alley.

2. Since the alley was unopened grantees did not take title in fee to the center of it, but by implication acquired an easement or right-of-way over the land. There is an implied covenant that there is a way, corresponding with the one described in the deeds, that so far as the grantors are concerned it shall be continued and that grantees, their heirs and assigns, shall have the benefit of it.

3. Apart from the dedication of the alley to public use, grantees from the Benedict heirs acquired private contract rights in the alley.

4. The deeds in the chain of title of plaintiffs gave them notice of the easement.

5. The reference to the alley in the deeds to be laid out binds purchasers from the Benedict heirs and those holding under them.

6. When plaintiffs in 1949 acquired from the Benedict heirs title to the portion of the bed of Lincoln Alley, they took but the bare legal title to the soil in trust for all the owners of those lots to which the way is appurtenant.

7. Plaintiffs have not acquired the right to exclude Jacob Kurlancheek or Sadie Kurlancheek from the

use of Lincoln Alley in rear of plaintiffs' property.

8. There can be no estoppel against either Jacob Kurlancheek or Sadie Kurlancheek.

9. The easement in Lincoln Alley is not appurtenant to the properties known as 244 and 242 Main Street, and therefore, no one is entitled to use any part of Lincoln Alley to serve those properties.

10. The easement in Lincoln Alley is not appurtenant to the old warehouse and garage, and therefore, no one is entitled to use any part of Lincoln Alley to serve those properties.

11. Plaintiffs' bill should be dismissed as to Adam Piekarski.

12. The parties shall pay their respective costs.

### Decree Nisi

And now, February 20, 1951, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That an injunction issue restraining Benjamin Kurlancheek, Eli Kurlancheek, Jacob Kurlancheek and Sadie Kurlancheek, their agents, servants and employes, from in any way using Lincoln Alley to serve the properties Nos. 244 and 242 Main Street, Duryea, and the old warehouse and garage in rear thereof.

2. Plaintiffs' bill is dismissed as to Adam Piekarski.

3. The parties shall pay their respective costs.

The prothonotary shall enter this decree nisi and give notice to the parties, or their counsel of record of the entry of the decree, and if no exceptions are filed within 10 days, this decree nisi shall be entered as the final decree herein by the prothonotary, as of course.