Culbertson, Receiver, Appellant, v. Cook et al.

Argued May 25, 1932.  Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Albert L. Thomas,* for appellant.—The power of attorney was sufficient to authorize Harmon C. Smith to enter a valid postponement of lien of the company mortgage: Campbell v. Foster Home Assn., 163 Pa. 609; Mott v. Kaldes, 288 Pa. 264; Nelson v. Von Bonnhorst, 29 Pa. 352; Singerly v. Thayer, 108 Pa. 291; Smith v. Weaver, 41 Pa. Superior Ct. 253.

The facts constitute an estoppel on the part of the Home Security Investment Company: Daley v. Iselin, 218 Pa. 515; Keefe v. Sholl, 181 Pa. 90; Zoebisch v. Rauch, 133 Pa. 532; Freyer v. McCord, 165 Pa. 539; Warren v. Hays, 74 N. H. 355; Hill v. Epley, 31 Pa. 331; Cuttle v. Brockway, 32 Pa. 45; Alexander v. Kerr, 2 Rawle 83; Goundie v. Water Co., 7 Pa. 233; McKinney v. Brights, 16 Pa. 399; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; Klerlein v. Werner Co., 98 Pa. Superior Ct. 440; Tustin v. Coal & Iron Co., 250 Pa. 425.

*Frank J. Thomas,* with him *Paul E. Thomas,* for appelle.—The power of attorney was insufficient to justify Smith's action.

The receiver of the Home Security Investment Company, under the facts in this case, is estopped from insisting that postponement of the lien of its mortgage by its secretary-treasurer was invalid: Gunster v. Heat & Power Co., 181 Pa. 327; United Security Life Ins. & Trust Co. v. Bank, 185 Pa. 586.

That such knowledge is imputed to the company which cannot, after this length of time, repudiate the act of its officer, whether authorized or not, we cite the following: Filby v. Miller, 25 Pa. 264; Union Trust Co. of Pitts-

burgh v. Cain, 29 Pa. Superior Ct. 189; Wilson v. Ins. Co., 174 Pa. 554; Kalmutz v. Ins. Co., 186 Pa. 571.

OPINION BY MR. JUSTICE DREW, June 30, 1932:

The Home Security Investment Company (hereinafter called the company) is a Pennsylvania corporation engaged in the business of lending money upon mortgages, with its principal office in the City of Meadville, Crawford County, Pa. Plaintiff, as receiver of the company, caused to be issued a rule to show cause why the postponement of the lien of a mortgage held by the company upon property in Meadville given by the defendants, Perry D. Cook and Ruby Flower Cook, his wife, to that of another mortgage on the same property given to Mrs. Katherine McNamara (whose executrix is the other defendant), should not be stricken from the record. The postponement had been entered by the company's attorney-in-fact. After hearing, the rule was discharged, and plaintiff appealed, assigning that action of the court as error.

The facts of the case are not disputed and may be summarized as follows: In March, 1923, the company, by resolution appointed its secretary and treasurer, Harmon C. Smith, its attorney-in-fact, and executed a power of attorney as follows:

"The Home Security Investment Company has, by resolution of its board of directors, made, constituted and appointed, and does hereby make, constitute and appoint Harmon C. Smith, secretary and treasurer of said Company, its true and lawful attorney for it and in its name and to its use, to demand, collect, recover and receive all such sums of money, due and payable and coming to it or its successors, by virtue of any mortgages, judgments, promissory notes, contracts or engagements whatsoever, giving and granting unto its said attorney full power to institute any suits and process in law which may be necessary for the collection and recovery of the same, and to prosecute the same to final

judgment, and therein to appear for and represent it before any court or magistrate having jurisdiction. And upon the payment or the receipt of the money due on mortgages or judgments to mark the same satisfied of record, and give such acquittances and discharges for same, together with promissory notes, contracts or other engagements whether of record or otherwise, as may be necessary and proper; and also, at his discretion, compromise, adjust and settle any claim or matters in dispute."

This power of attorney was duly recorded in the recorder's office of Crawford County. In October, 1923, the company took a second mortgage for $3,500 upon a certain plot of land owned by the Cooks. The senior mortgage upon the property was in the amount of $4,500 and was held by the Meadville Building & Loan Association. Both mortgages were recorded. Thereafter, in March, 1925, Smith solicited from one Dickson, who was acting for Mrs. McNamara, another mortgage for $5,000 upon the property in question. Smith agreed that if the loan were granted he would postpone the lien of the company's mortgage to that of the new mortgage. This he could do, he said, because he was "really the whole company," and had a power of attorney on record. After Dickson had examined the power of attorney the mortgage was executed, and the postponement in question was entered on March 21, 1925, on the margin of the record of the company's mortgage. The proceeds of the new loan were used in the following manner: $4,500 to pay off the mortgage of the Meadville Building & Loan Association, $150 as a fee to Dickson, $108 as interest on the mortgage held by the company, and the balance was given to Mr. and Mrs. Cook. The present action was instituted April 11, 1931, a little more than six years after this transaction was terminated.

The learned judge of the court below was of opinion that even if Smith did not have authority under the power of attorney to postpone the lien of the company's

mortgage, his knowledge, as an officer of the company, of the fact that the postponement had been entered, must be imputed to the company, and that, inasmuch as the postponement existed as a matter of record for over six years before the company made any complaint, it is now estopped from claiming want of authority in its officer and attorney-in-fact to do as he did. Accordingly he dismissed plaintiff's petition. This we believe was error.

It cannot be maintained, nor, indeed, do appellees seriously contend, that Smith had express authority to postpone the lien of the company's mortgage by virtue of the letter of attorney. The powers therein granted were specific, not general; he could (1) demand and receive moneys payable to the company, (2) institute and prosecute to judgment actions at law necessary for their collection, (3) upon payment give such acquittances and discharges as might be necessary and proper, and (4) compromise matters in dispute. None of these powers can possibly be interpreted to mean or include postponement of mortgages. It is a well known rule that letters of attorney are to be construed strictly, and when special powers are given they are not to be enlarged unless clearly so intended: Campbell v. Foster Home, 163 Pa. 609; Mott v. Kaldes, 288 Pa. 264; Gross v. Kincaid, 83 Pa. Superior Ct. 514.

Appellees contend, however, that Smith, as secretary and treasurer, was in effect the general manager in control of the company, and that by virtue of his office he had implied authority to do anything in the usual line of business of the company, such as postponing the lien of a mortgage held by it. One difficulty with this argument is that the circumstances relating to the execution of the McNamara mortgage were not such as would warrant Dickson, or any one else, in assuming that Smith had authority to execute the postponement. It is a familiar rule that one dealing with an agent is bound to ascertain the extent of the agent's authority (Long v. Lehigh C. & N. Co., 292 Pa. 164; First National Bank

v. St. John's Church, 296 Pa. 467; Paper M. S. Co. v. Container Corporation, 301 Pa. 62; Reifsnyder v. Dougherty, 301 Pa. 328), which is, prima facie, limited to the powers expressly granted, or arising by implication from the character of the grant: Mahoning Valley Bread Co. v. B. & O. R. R. Co., 83 Pa. Superior Ct. 379. Where, as here, the transaction which the agent proposed was clearly adverse to the interests of his principal, there could arise no implication that the agent was acting within the scope of his authority. "A general agency, however, does not import unqualified authority; and the implied power of any agent, however general, must be limited to such acts as are proper for an agent to do, and cannot extend to acts clearly adverse to the interest of the principal." 2 C. J. 582. "In the absence of anything indicating a different meaning, a manifestation of consent that another may act as agent is, notwithstanding general terms, interpreted as meaning only acts on account of and for the benefit of the proposed principal." Restatement of Agency, section 250. The situation here is analogous to that in Paper M. S. Co. v. Container Corporation, supra, where the general manager of defendant's paper mill, who, by virtue of his position, had authority to buy waste paper at the market price, made a contract for an indefinite time, terminable upon notice, with the plaintiff, a dealer in waste paper, whereby defendant was to buy all the paper supplied to it by plaintiff, to be paid for at temporary rates, but if the temporary rates did not cover the cost to which plaintiff would be subjected, defendant, at the termination of the contract was to pay plaintiff whatever losses it might sustain. Concerning this contract, we said, "This is certainly a somewhat remarkable and out-of-the-ordinary business arrangement and before defendant could be held obligated to such an undertaking, it would have to appear very clearly that the manager of its mill had authority to enter into such a contract; the existence of such authority was denied

in the affidavit of defense......It is difficult to imagine a more jughandled contract than this would be, every advantage is on one side, defendant had all to lose and nothing to gain; if there was a loss, it must respond for the deficiency; if a gain, plaintiff kept it......It may be stated as a cardinal principle of business dealings that the making of no such contract as this could be assumed to be within the powers of the manager of a mill, and before acting upon assumed power by such an official, it was the duty of the other party to the contemplated contract to trace his authority to its source to ascertain whether he possessed such power." In the case at bar, Smith's proposal to substitute a new mortgage as a prior lien to the mortgage of his company, particularly when that mortgage was in a larger amount than the existing prior lien, was so obviously an act contrary to the interests of his company that it was the duty of Dickson, representing Mrs. McNamara, to ascertain whether he possessed such power. If, after his examination of the power of attorney, he had any thought that Smith had authority not contained in that instrument, it was his imperative duty to trace it to its source. This he did not do. True, Dickson testified that Smith said that he had authority to postpone, but it is elementary that agency to do the act in question cannot be established by the declarations of the agent: First National Bank v. St. John's Church, supra; Zavodnick v. A. Rose & Son, 297 Pa. 86.

Appellees further argue that even if Smith was not authorized, the company, by its long silence after the entry on the record, must be presumed to have ratified the postponement of the lien of its mortgage. This argument has no merit. Before an unauthorized act of an agent can be said to be ratified by the principal, it must have full knowledge of all the material facts (Daley v. Iselin, 218 Pa. 515; Bunting v. Goldstein, 283 Pa. 356; Lehan v. Integrity Trust Co., 303 Pa. 357), and the question of ratification cannot arise in the ab-

sence of proof that the principal had knowledge of such facts: Zoebisch v. Rauch, 133 Pa. 532; Pollock v. S. S. Car Co., 230 Pa. 136; Shields v. Hitchman, 251 Pa. 455. There is nothing in the record to show that, before the presenting of plaintiff's petition, the company ever knew of the postponement, and it certainly cannot be held to have had constructive notice of the completely unauthorized entry on the margin of the record.

Nor, as appellees argue, is the company estopped from now setting up Smith's want of authority to postpone the lien of its mortgage. Estoppel is based upon misrepresentation, and cannot be claimed where, as here, both parties had equal knowledge of the facts. Dickson was in possession of all the facts relating to Smith's agency, and if he mistakenly inferred from the letter of attorney that Smith was empowered to do this act, that was an error for which the company cannot be held responsible. As we said in Mott v. Kaldes, supra, "The primary ground of the doctrine of estoppel is that it would be a fraud to assert to the prejudice of another a state of facts to the contrary of that which he whom it is sought to estop had previously represented, and on the faith of which the other had acted; the doctrine assumes a lack of knowledge by the party claiming the estoppel. In Hill v. Epley, 31 Pa. 331, 334, we said, 'If, therefore, the truth be known to both parties or if they have equal means of knowledge, there can be no estoppel.' See also Tustin v. Phila. etc. Co., 250 Pa. 425, 436, and Bittner. v. Quemahoning Coal Co., 271 Pa. 579, 582. Here, the only matter which perhaps was unknown to appellant is a matter of law, namely, that the power of attorney was not sufficiently broad......; yet we must assume the law to have been known to all, and a mistake of that kind will not help either side." See also Reifsnyder v. Dougherty, supra.

Since the postponement of the lien of the company's mortgage by Smith was totally unauthorized, and was not ratified by the company, the latter is in no way

bound by his act, and the order dismissing plaintiff's petition and rule was erroneous.

The order of the court below is reversed, and the rule to show cause why the postponement of lien should not be stricken off is made absolute.