## C. F. Simonin's Sons, Inc., Appellant, *v.* American Credit Indemnity Company of New York.

Argued January 23, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Hiram B. Calkins,* with him *Horace Michener Schell,*
for appellant.

*Ralph B. Evans,* for appellee.

OPINION BY MR. JUSTICE DREW, March 25, 1935:

Plaintiff brought this action in assumpsit upon an alleged oral contract of insurance whereby defendant was to indemnify plaintiff against loss due to the insolvency of certain of the latter's debtors. At the close of plaintiff's evidence, defendant moved for a compulsory nonsuit. The motion was granted by the trial judge, and from the refusal of the court in banc to take off the nonsuit plaintiff has appealed.

On or about June 3, 1925, defendant issued to plaintiff its bond of indemnity, dated May 29, 1925, guaranteeing the latter against loss, to an amount not exceeding $21,175, on plaintiff's sales of edible oils between May 1, 1925, and April 30, 1926, due to the insolvency of certain debtors of plaintiff having specified ratings in the books published by the mercantile agency of R. G. Dun & Company. The bond did not cover debtors having the C-2 rating. In the latter part of 1925, plaintiff endeavored to procure additional coverage to include debtors having a C-2 rating, the negotiations being conducted with Furphy, a soliciting agent employed by the defendant's Philadelphia office. On December 24, 1925, plaintiff received a bill on the billhead of defendant, dated November 27, 1925, for premium for coverage on the C-2 rating, and on the same day a check in payment thereof was handed to Furphy in person. He returned the check on January 4, 1926, however, accompanied by a letter in which he stated that defendant was unwilling to write the contract on the terms proposed.

In the meantime, a customer of plaintiff, having a C-2 rating, had become indebted to plaintiff in a sum exceeding $15,000, for edible oils purchased from the latter between November 25 and December 7, 1925, and on or about December 22d of that year plaintiff's debtor became insolvent and was adjudicated a bankrupt. It also appears that on the latter date the collection manager from defendant's New York office attended a meeting of the creditors of the bankrupt, representing defendant in

behalf of plaintiff and another creditor. A letter dated January 20, 1926, was sent to plaintiff by defendant's vice-president, in which the latter said that his company would not recognize the claim against plaintiff's debtor "as a loss under the policy," and that no adjustment could or would be made. This letter was in answer to a letter of plaintiff's dated January 8, 1926, the contents of which do not appear in the record.

The bond issued to plaintiff by defendant provided: "No agent is authorized to make any alteration in, or addition to, this bond; and no addition to, or alteration in, this bond, shall be valid unless signed by the president of the company." To avoid the effect of this provision, plaintiff contended that it was "not proceeding upon any theory of an extension of the policy," but was "proceeding upon a verbal contract of insurance made by the defendant company with the plaintiff, through its agent Furphy." No attempt was made to show that Furphy, who was admittedly only a special agent, had any actual authority, express or implied, to make the contract alleged, and in fact plaintiff does not argue that Furphy had such authority. It does claim, however, that defendant's conduct in sending the bill received by plaintiff on December 24, 1925, for premium on C-2 coverage, and in sending a representative to the creditors' meeting on December 22d, amounted to a ratification of Furphy's acts. With this contention we are unable to agree.

As we said in Rossi v. Firemen's Ins. Co., 310 Pa. 242, 250, "A contract of insurance entered into without the issuance of a policy is to be regarded as made upon the terms and subject to the conditions contained in the ordinary form of policies used by the company." The bond already issued to plaintiff, which was apparently of the ordinary type used by defendant, provided that it did "not cover any loss occurring prior to the payment of the deposit premium." While Furphy may have taken it upon himself to waive this provision, it nowhere appears that defendant was aware of any such waiver, and de-

fendant cannot be held to have ratified his acts when it was ignorant of so important a step on his part. Before unauthorized acts of an agent can be said to have been ratified by the principal, the latter must have full knowledge of all the material facts and circumstances attending the acts: Daley v. Iselin, 218 Pa. 515; Pollock v. Standard Steel Car Co., 230 Pa. 136; Shields v. Hitchman, 251 Pa. 455; Lehan v. Integrity Trust Co., 303 Pa. 357; Culbertson v. Cook, 308 Pa. 557; see Restatement, Agency, section 91. The terms of the original bond show that it was the company's practice to require payment of a deposit premium when application was made, and, in the absence of evidence that it was aware of Furphy's departure from this practice and his alleged waiver of the provision regarding losses occurring before such payment, defendant's conduct is not to be deemed a ratification.

An attempt was made by plaintiff to show that Furphy had been clothed with apparent authority by defendant, through advertisements in a Philadelphia newspaper of defendant's branch office in that city. None of these advertisements mentioned Furphy's name, however, or contained any reference to him. Plaintiff's evidence shows that Furphy, while connected with that office, was neither manager, general agent, nor assistant general agent, but merely a "special agent" employed to solicit business. Nowhere does it appear that Furphy was in any way held out by defendant as having authority to bind it by the contract alleged.

Plaintiff further argues that even if Furphy was not authorized, defendant, having in its letter of January 20, 1926, rejected plaintiff's claim on the ground that it was not a loss under the policy, was estopped to set up any other defense. However, that letter shows that it was in answer to a letter from plaintiff of January 8th, the contents of which were not in evidence. For all that appears, plaintiff's letter may have asserted a claim under the policy, rather than upon the alleged oral agree-

ment, in which case defendant's letter was an entirely appropriate answer and represented no election of defenses on its part. Defendant cannot be held to have waived the defense unless it affirmatively appears that there was an opportunity to set up the defense. Until plaintiff claimed on the basis of the alleged oral agreement, defendant obviously could not set up Furphy's lack of authority to enter into such an agreement.

Furthermore, defendant's letter was sent several months before litigation was begun, and defendant's present defenses were fully set forth in its affidavit of defense, the first step on its part in the litigation. Plaintiff has thus shown no change in position by defendant "after action brought." Nor has any reliance on defendant's letter to the injury of plaintiff been indicated or even suggested. As we said in Welsh v. London Assurrance Corp., 151 Pa. 607, 618, "No party is required to name all his reasons at once, or any reason at all, and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce it now would be unfair or unjust: Ins. Co. v. Brown, 128 Pa. 386. The whole doctrine depends on estoppel, and the essential feature of it is loss or injury to the other party by the act of the party to be estopped."

Plaintiff has thus failed to show authority or apparent authority in Furphy to bind defendant by the contract alleged, or ratification by defendant of his acts. The court below therefore properly refused to take off the nonsuit.

Judgment affirmed.