**[J-20-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| IN RE: JOSEPH L. KOEPFINGER, AN INDIVIDUAL | : | No. 20 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered February 4, |
| APPEAL OF: JOSEPH L. KOEPFINGER | : | 2021 at No. 123 WDA 2020, |
| | : | reversing the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered January 24, 2020 at No. 02- |
| | : | 18-03244, and remanding |
| | : | |
| | : | ARGUED:  April 19, 2023 |

**OPINION**

**JUSTICE DONOHUE**                                                **DECIDED: AUGUST 22, 2023**

This appeal requires the Court to consider whether a judicial determination that a power of attorney was void ab initio invalidates an irrevocable trust created by the purported agent under the void power of attorney.  The orphans' court answered this question in the affirmative, but the Superior Court reversed.  For the reasons that follow, we hold that, when a court concludes that a power of attorney is a nullity, any action taken under the auspices of the power of attorney is likewise a nullity.  Consequently, we vacate the Superior Court's judgment and reinstate the orphans' court's order.

**I.  Procedural History**

Appellant Joseph Koepfinger ("Father") is a nonagenarian and father of several adult children, including Appellee Margaret Koepfinger ("Daughter").  On September 6, 2016, which was shortly after the death of Father's wife/Daughter's mother, Father executed a power of attorney ("POA"), naming Daughter as his agent.  The POA gave

Daughter the authority to, among other things, create an irrevocable trust for Father; it further provided that Father could revoke the POA but only in writing.

Soon after the execution of the POA, tensions began to build between Father and Daughter due to Father's developing relationship with Madeline Masucci ("Masucci"). In 2017, Father allegedly orally informed Daughter that he revoked the POA and that he executed a new power of attorney, naming his son/Daughter's brother as his agent. Daughter, however, claims that she was not informed of these events until May of 2018.

In the meantime, on April 27, 2018, acting as Father's agent under the POA, Daughter created an irrevocable trust for Father, placing a substantial amount of his assets into that trust. Daughter named herself as trustee. After Daughter allegedly was informed that Father revoked the POA, she filed a Petition for Declaratory Judgment requesting, in relevant part, judicial declarations that: (1) the 2016 POA was not revoked at the time that she created the trust; (2) the creation and funding of the trust was within her scope of authority under the POA; and (3) the trust is valid. Petition for Declaratory Judgment, 5/21/2018, at Wherefore Paragraph. Daughter named the following as respondents: Father; Masucci; Zacharia & Brown, P.C., a law firm that had represented Father in the past and that drafted the POA; and PNC Bank, N.A., and PNC Investments, LLC, the entities that provided banking and investment services to Father.[1] In her petition, Daughter stated that she created the trust to protect Father from being financially exploited by Masucci.

Daughter further contended in her petition that any harm that her actions as agent and trustee may have caused Father's financial affairs was the fault of: (1) Zacharia &

---

[1] The orphans' court's docket and record reflect that: (1) Zacharia & Brown, P.C., did not participate in the orphans' court proceedings; (2) Masucci only filed preliminary objections to Daughter's Petition for Declaratory Judgment; and (3) the PNC entities merely filed a reply to that petition. None of these parties participated in the appeals to the Superior Court or this Court.

Brown, P.C. - as drafters of the 2016 and 2017 powers of attorney with full knowledge of Masucci's financial exploitation of Father; (2) Father - by failing to inform Daughter in writing of his revocation of the POA; (3) Masucci - given her financial exploitation of Father; and (4) PNC Bank, N.A. - insofar as it refused to abide by Daughter's instructions as agent and trustee.

In response, Father alleged, among other things, that the POA failed to comply with Chapter 56 of the Probate, Estates and Fiduciaries Code ("Code"), 20 Pa.C.S. §§ 5601-5614. Supplement to Motion to Dismiss Declaratory Judgment Action for Lack of Standing, 8/29/2018, at ¶ 5. More specifically, Father argued that the POA was invalid because it was not acknowledged before a notary public and was not witnessed properly, both of which are required by Section 5601 of the Code.[2] *Id.* at ¶¶ 6-8. Father contended that the trust was invalid because it was created through an invalid POA. *Id.* at ¶¶ 10-11.

---

[2] Subsection 5601(b)(3) of the Code states as follows:

> (3) For a power of attorney executed on or after the effective date of this paragraph, the signature or mark of the principal, or the signature of another individual signing a power of attorney on behalf of and at the direction of the principal, shall be:
>
> (i) Acknowledged before a notary public or other individual authorized by law to take acknowledgments. The notary public or other individual authorized by law to take acknowledgments shall not be the agent designated in the power of attorney.
>
> (ii) Witnessed by two individuals, each of whom is 18 years of age or older. A witness shall not be the individual who signed the power of attorney on behalf of and at the direction of the principal, the agent designated in the power of attorney or the notary public or other person authorized by law to take acknowledgments before whom the power of attorney is acknowledged. Nothing in this section shall prohibit an acknowledgment of a power of attorney before a member of the bar of the Pennsylvania Supreme Court in

(continued…)

The case originally was assigned to the Honorable Kathleen Durkin, who held a hearing on the matter on December 11, 2018. Focusing on Father's defense that the POA was never effective, in an order dated February 13, 2019, Judge Durkin made findings of facts and conclusions of law. Relevant to this matter, Judge Durkin found as follows.[3]

Father's attorney, Thomas McCaffery, Esq. ("Attorney McCaffery"), who is "of counsel" at Zacharia & Brown, P.C., prepared the 2016 POA. Orphans' Court Order, 2/13/2019, ¶ 9. Attorney McCaffery sent the POA to Father by letter dated August 23, 2016, and the letter stated: "We will date, witness and notarize the document when you return it to our office after all signatures have been signed." *Id.* ¶ 10. Attorney McCaffery did not review with Father the authority that the POA provided to Daughter to create an irrevocable trust. *Id.* ¶ 11. Daughter made a note on the August 23rd letter, "mailed 9/17/16," beside a paragraph that stated, "Once the Durable Power of Attorney is completed as directed in No. 2 above, please return the original to me and I will have the document notarized." *Id.* ¶ 12.

According to Father's testimony, the witnesses to the POA and the notary did not meet at his residence, and he did not recall where or when he signed the POA. *Id.* ¶¶ 13 & 14. Daughter did not remember how or when Father signed the POA, and the notary had no record in her logbook that she notarized the POA. *Id.* ¶¶ 15 & 16. In fact, none

---

the manner authorized by 42 Pa.C.S. § 327(a) (relating to oaths and acknowledgments) certified in the manner provided by 57 Pa.C.S. § 316(2.1) (relating to short form certificates) provided the attorney taking the acknowledgment does not act as one of the two witnesses required by this paragraph.

20 Pa.C.S. § 5601(b).

[3] The findings and conclusions have not been challenged.

of the witnesses at the hearing recalled the circumstances surrounding the execution of the POA. *Id.* ¶ 17.

Judge Durkin observed that, "[u]nder 20 Pa.C.S. § 5601(b)(3), the signature or mark of the principal shall be acknowledged before a notary public." *Id.* ¶ 18. She determined that Attorney McCaffery's letter and Daughter's notation thereon are "credible evidence that the POA was not properly executed under 20 Pa.C.S. § 5601(b)(3)." *Id.* ¶ 19. Thus, because the judge concluded that Father did not execute the POA before a notary as required by Subsection 5601(b)(3)(i) of the Code, she held that "the 2016 POA is invalid and void ab initio."[4] *Id.* ¶ 20. Lastly, the order directed Daughter to file an accounting of all of the actions that she took as trustee of the irrevocable trust within ninety days of the entry of the order. Important to the instant appeal, Judge Durkin made no explicit findings of fact or conclusions of law regarding the validity of the trust in her February 13, 2019 order.

Thereafter, Father filed a "Motion to Terminate Trust," wherein he argued that the trust should be terminated. More specifically, he posited that, because Judge Durkin concluded that the POA was void ab initio, any document created pursuant to the POA, including the trust, is invalid.[5] Daughter filed preliminary objections, contending that the motion should be dismissed because: (1) it failed to comply with controlling law that requires, inter alia, that actions terminating trusts be in the form of a petition and verified;

---

[4] The term "void ab initio" has been defined as follows: "Null from the beginning, as from the first moment when a contract is entered into. A contract is void ab initio if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract." *Void Ab Initio*, BLACK'S LAW DICTIONARY (11th ed. 2019). This Court has held that the failure to conform to a mandatory statutory procedure renders the regulated activity a nullity. *Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 99 (Pa. 1975). We use the terms void ab initio and nullity interchangeably.

[5] This was the same position taken by Father in response to Daughter's Declaratory Judgment Action.

(2) contrary to the rules that govern orphans' court proceedings, Father failed to attach the POA or the trust to his motion; (3) the motion was insufficiently pled as it, inter alia, did not aver any wrongdoing on Daughter's part; (4) the motion was legally insufficient because it ignored, inter alia, the grant of immunity that Section 5608 of the Code, 20 P.S. § 5608, provides to persons who rely on POAs in good faith and because the motion lacked any allegation that would require termination of the trust under controlling law; and (5) the objections Father presented in the motion should be brought by objection to the accounting of the trust.

By order dated June 10, 2019, but filed on June 11, 2019, the Honorable Lawrence O'Toole denied the "Motion to Terminate Trust."[6]  The order did not state the reasons for this ruling, and there was no accompanying opinion.[7]  The case then was reassigned to the Honorable Michael McCarthy, who held an argument session on December 17, 2019, concerning the validity of the trust.[8]

Daughter primarily argued that Subsections 5608(c) and (d) of the Code allow any person or entity acting in good faith to accept a power of attorney without liability and to rely on a facially valid power of attorney, unless he or she has actual knowledge of the invalidity or other defect of the document.[9]  She contended that:  (1) she created the trust

---

[6]   In his brief to this Court, Father represents that Judge O'Toole, acting as the administrative judge of the orphans' court, signed the order on behalf of Judge Durkin. Father's Brief at 9-10.  The certified record supports this representation as the signature line reads "L. O. by Durkin J."  Orphans' Court Order, 6/11/2019.

[7]  The order stated as follows:  "AND NOW, to wit, this 10[th] day of June, 2019, it is hereby ORDERED that the Joseph L. Koepfinger's Motion to Terminate Trust is DENIED." Orphans' Court Order, 6/11/2019.

[8]  The parties and the Superior Court represent that Daughter's declaratory judgment action was reassigned to Judge McCarthy due to Judge Durkin's retirement.  Father's Brief at 10; Daughter's Brief at 7; *In re Koepfinger*, 2021 WL 400304, *1 (Pa. Super. Feb. 4, 2021).

[9]  We provide the full text of Subsections 5608(c) and (d) infra at p. 19.

in good faith; (2) pursuant to these provisions, the trust is valid; and (3) "[t]o suggest that [she] was not entitled to the good faith defense created by Section 5608 strains credulity." Memorandum of Law, 12/4/2019, at unnumbered page 7.

Daughter noted that the Legislature amended Section 5608 in 2014, reversing this Court's decision in *Vine v. Commonwealth of Pennsylvania, State Employees' Retirement Board*, 9 A.3d 1150 (Pa. 2010). In *Vine*, this Court held that the predecessor to the current Section 5608 did not immunize the State Employees' Retirement System ("SERS") from liability where it made benefit distributions in reliance on a power of attorney that was subsequently determined to have been executed by an incapacitated principal.

Citing to the historical and statutory notes associated with this amendment, Daughter stated that the Legislature expressly explained that, in interpreting the amended version of Section 5608, courts must give due consideration to the Legislature's intent to reverse the *Vine* Court's interpretation of the previous version of Section 5608.[10] Memorandum of Law, 12/4/2019, at unnumbered page 8. In Daughter's view, the Legislature thereby permitted "persons to rely upon a facially valid power of attorney in good faith, unless they had **actual knowledge** of a defect or deficiency in the power of attorney." *Id.* at unnumbered page 13 (emphasis in original). Based upon this premise, she believed that Section 5608 served to validate the irrevocable trust even though the power of attorney she acted under was invalid. *Id.* at unnumbered page 15.

---

[10] *See* Act of 2014, July 2, P.L. 855, No. 95, § 9(5) ("In interpreting and applying the amendment or addition of 20 Pa.C.S. §§ 5601(f), 5608, 5608.1, 5608.2 and 5611, a court shall give due consideration of the intent of the General Assembly to reverse the interpretation of 20 Pa.C.S. § 5608 as set forth in *Teresa M. Vine v. Commonwealth of Pennsylvania, State Employees' Retirement Board*, 9 A.3d 1150 (Pa. 2010).").

Next, Daughter argued that Judge Durkin already had ruled that the trust is valid when she denied Father's motion to terminate the trust.[11] Thus, Daughter contended that the coordinate jurisdiction rule or the law-of-the-case doctrine precluded the orphans' court from holding otherwise. For these reasons, Daughter advocated that the court should deem the trust valid.

Father contended that the trust should be terminated. His sole argument was that, because Judge Durkin had concluded that the POA was void ab initio, the trust necessarily was void as well. Relying primarily on this Court's decision in *Glen-Gery Corporation v. Zoning Hearing Board*, 907 A.2d 1033 (Pa. 2006),[12] and the United States Supreme Court's opinion in *Norton v. Shelby County*, 118 U.S. 425 (1886),[13] Father

---

[11] Daughter identified Judge Durkin as the jurist that denied Father's motion. As explained above, the orphans' court's docket reflects that Judge O'Toole entered the order denying that motion.

[12] In *Glen-Gery Corporation*, this Court held that a claim "alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought notwithstanding" the fact that the statutory time limits for presenting general challenges to the ordinance had expired, because if the alleged defects in the ordinance were substantiated, then the ordinance would be void ab initio. *Glen-Gery Corp.*, 907 A.2d at 1035.

[13] As this Court explained in *Glen-Gery Corporation*,

> *Norton* [] is the most frequently cited case dealing with the doctrine of void *ab initio*. In *Norton*, the Tennessee legislature reorganized the City of Memphis and, through an enactment, transferred the powers of the Quarterly Court to a newly created Board of Commissioners for the purpose of authorizing the Board to purchase bonds in a railroad company. A new Constitution came into force in Tennessee that declared actions such as those taken by the Board to be unconstitutional. The legislation was subsequently held by the Supreme Court of Tennessee to be unconstitutional and invalid, and the Board created by it to have no legal existence.
>
> The suit in *Norton* was initiated to enforce payment of twenty bonds issued by the Board. The U.S. Supreme Court stated that, "[a]n unconstitutional act is not a law; it confers no rights;

(continued…)

posited that a rule of orderly law dictates that, "if the initial document is void ab initio, then any document or act flowing from the original document is then void." Father's Brief in Support of Terminating the Trust, 12/4/2019, at unnumbered page 5.

Positing that the issue in this case is one of first impression in Pennsylvania, Father looked to law from other jurisdictions to support his position. In this regard, Father chiefly focused on *Kotsch v. Kotsch*, 608 So.2d 879 (Fla. Dist. Ct. App. 1992).[14] Although Father conceded that *Kotsch* did not involve a conclusion that a power of attorney was void ab initio, he claimed that the facts of *Kotsch* and this case are "eerily similar." Father's Brief in Support of Terminating the Trust, 12/4/2019, at unnumbered page 7. Therefore, in his view, the cases should result in similar outcomes – a determination that an agent under a void power of attorney lacked the authority to act in a particular manner.

---

it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton,* 118 U.S. at 442, 6 S.Ct. 1121. The Court found that, because the new requirements of the Tennessee Constitution were not followed in the creation of the Board, no subsequent act of the county court could operate to render valid a previous void issue of bonds.

*Glen-Gery Corp.*, 907 A.2d at 1038. When courts speak of the "doctrine of void ab initio" or the "void ab initio doctrine," they ordinarily are referring to the theory that a statute that is "held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment." *Id.* at 1037 (quoting Erica Frohman Plave, *The Phenomenon of Antique Laws: Can a State Revive Old Abortion Laws in a New Era?*, 58 Geo. Wash. L.Rev. 111 (1990)).

[14] In *Kotsch*, an eighty-five-year-old father executed a power of attorney, giving his son the authority to perform certain tasks on the father's behalf. The power of attorney did not permit the son to dispose of his father's property by placing it into a trust. After the death of the father's wife/son's mother, the father began a relationship with a woman, who he later married. The son, acting under the power of attorney, created an irrevocable inter vivos trust to which he transferred the bulk of his father's liquid assets. *Kotsch*, 608 So.2d at 880. The father asked for a judicial declaration that the trust was void. The trial court refused father's request, but the District Court of Appeal of Florida reversed, holding that the son lacked the authority under the power of attorney to dispose of the father's property by placing it in a trust. The court, thus, deemed the trust void.

On January 24, 2020, the orphans' court entered an order finding the trust void and terminating the trust. The court noted that, in February of 2019, Judge Durkin declared the POA void ab initio. The court observed that Father then filed his motion to terminate the trust and that, in Daughter's preliminary objections to that motion, she challenged the motion on the grounds that it was procedurally deficient. According to the orphans' court,

> [t]he [o]rder of June 10, 2019 which denied the motion to terminate the trust did not, as set forth in the proposed order of court submitted by [Daughter] on January 14, 2020, hold that the [t]rust was not void ab initio. Rather that [o]rder determined only that the "Motion to Terminate Trust" [was] manifestly procedurally deficient, and promptly denied the motion.

Orphans' Court Order, 1/24/2020, at 2-3. The order also stated, "The prior determination that the [t]rust was void remained undisturbed by the [o]rder of June 10, 2019." *Id.* at 3. In closing, the order directed that all of the assets held in the trust were to be "re-titled into the name of Joseph Koepfinger individually within sixty (60) days of the date of" the order. *Id.*

Daughter timely filed a notice of appeal. In her court-ordered 1925(b) statement, Daughter raised, in relevant part, the following issues on appeal:

> 1. This [c]ourt erroneously held in the January 24, 2020 [o]rder that the Joseph L. Koepfinger Irrevocable Trust had been declared void by a prior order of court when no such prior order of court exists.
>
> 2. This [c]ourt in the January 24, 2020 [order] erroneously failed to follow or consider relevant statutory provisions governing powers of attorney. *See*, *e.g.*, 20 Pa.C.S. § 5608.
>
> 3. This [c]ourt in the January 24, 2020 [order] erroneously failed to recognize and follow a prior adjudication on the same issue in the same case by a different judge of the same court.

Concise Statement of Matters Complained of on Appeal, 2/19/2020.

The opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) ("Orphans' Court Opinion") relied on *Kotsch* for the proposition that an action taken pursuant to a null power of attorney is likewise null. The court explained that

> the observation in *Kotsch* that the powers of attorney are to be strictly construed and agents' powers are to be restricted accordingly is not pertinent to the matter at hand. **However, the further observation in *Kotsch* that a power of attorney creates the relationship of principal and agent and, in the absence of a valid power of attorney, the actions of the purported agent are a nullity does apply.**

Orphans' Court Opinion, 3/23/2020, at 5 (emphasis added).

Next, the orphans' court described the contents of the current version of Subsections 5608(c) and (d) of the Code and concluded that these provisions confer immunity upon persons that rely in good faith on powers of attorney. The court observed that Section 5608 "does not create the relationship of principal and agent where none had been intended[.]" *Id.* In so concluding, the court relied on an unrelated paragraph of our *Vine* decision, which dealt only with the limits of immunity from liability provided in the former version of Section 5608.

The orphans' court acknowledged that Daughter asserted "[that] the court erroneously held that the Joseph L. Koepfinger Trust had been declared void by a prior order of court." *Id.* at 6. While not directly addressing the error in this holding,[15] the orphans' court explained that, in concluding here that the trust was void, the court considered all arguments on the matter, including Daughter's reliance on Section 5608 of the Code. The orphans' court also inferred that, because Judge Durkin determined that Daughter was not acting under a valid POA when she created the trust, "actions ostensibly by her pursuant to a power of attorney conferred by [Father] were void." *Id.* (citing as an example *In re Estate of Newcomer*, 2015 WL 7302205, at *2 (Pa. Super.

---

[15] The prior order of February 13, 2019 declared the POA void ab initio, not the trust.

Apr. 10, 2015) (concluding that a fraudulently signed change of beneficiary form was a nullity and distributions could not be made pursuant to it)).

The orphans' court found further that Daughter's law-of-the-case argument was built on a presumption that the order denying Father's action to terminate the trust represented a finding that the trust was valid. It explained that the record does not contain "a firm basis" for making that presumption and the record "contains no explicit final determination by Judge Durkin regarding the validity of the trust." *Id.* Having rejected Daughter's arguments, the orphans' court held that the trust created pursuant to the void POA was likewise void.

In an unpublished memorandum, a three-judge panel of the Superior Court reversed the orphans' court's order and remanded to that court. *In re Koepfinger*, 2021 WL 400304 (Pa. Super. Feb. 4, 2021), *reargument denied* (Apr. 15, 2021). The court noted that Daughter raised three issues on appeal: (1) whether the orphans' court erred by failing to follow or consider Section 5608; (2) whether the orphans' court erred by holding that Judge Durkin previously had determined that the trust was void; and (3) whether the orphans' court erred by failing to apply the law-of-the-case doctrine. Respectfully, it is not entirely clear what the Superior Court ultimately held, as it did not directly address the issue at the heart of this matter, i.e., whether the judicial determination that the POA was void ab initio rendered the trust invalid. Apparently, the intermediate court agreed with Daughter that the lower court erred as she alleged in her appellate issues (1) and (2).

Regarding Daughter's first issue, the Superior Court found that, in ruling that the trust was invalid, the orphans' court's reliance on *Vine* was misplaced. The intermediate court highlighted that the Legislature amended Section 5608 two years before Daughter created the trust and that, in doing so, the Legislature explicitly stated its intention to

reverse *Vine*. Based upon this conclusion, the Superior Court opined that the orphans' "court's reliance on *Vine* to conclude that a trust instrument created by an improperly executed, but otherwise facially proper [power of attorney] is void upon creation, was error." *Id.* at *2. The intermediate court further explained that Section 5608 concerns liability for relying on a facially valid power of attorney and, therefore, has no applicability to the continuing validity of the trust. Yet, the Superior Court failed to recognize that the orphans' court reached the same conclusion. *See* Orphans' Court Opinion, 3/23/2020, at 5 ("20 Pa.C.S.[] § 5608 confers immunity upon innocent third parties when the purported agent's authority is void, invalid or terminated; it does not create the relationship of principal and agent where none had been intended[.]").

As to Daughter's second issue, the Superior Court agreed that, prior to the orphans' court's January 24, 2020 order, "the orphans' court had not issued any other order declaring the [t]rust void."[16] *Id.* at *3. The court also criticized Father and the lower court for failing to point to any authority that would automatically render void an irrevocable trust created pursuant to a void ab initio power of attorney.[17]

Although agreeing with the orphans' court's conclusion that Section 5608 does not validate an invalid trust, the intermediate court found merit to Daughter's claims that the orphans' court erred in its application of Section 5608 by citation to *Vine.* It also found the orphans' court's statement in its January 24, 2020 order that Judge Durkin previously had determined that the trust was void was error even though the orphans' court

---

[16] While this statement is correct, as explained in the Orphans' Court Opinion, in reaching the conclusion that the trust was invalid, it considered all of the arguments raised by Daughter.

[17] The panel apparently did not recognize the issue was one of first impression. It did not discuss or acknowledge the case law cited by Father that supported, by analogy, the conclusion that the void POA rendered the trust likewise void. Further, the intermediate court did not address the orphans' court's reliance on *Kotsch* or its rejection of Daughter's reliance on Section 5608 to validate the trust.

articulated alternative reasons for invalidating the trust. Because of its agreement with Daughter on these issues, the intermediate court stated that it need not address Daughter's law-of-the-case issue.[18] Although it rejected Daughter's only substantive argument that Section 5608 validated the trust, it offered no basis for its conclusion that the trust was valid even though it was created under the auspices of a POA that was void ab initio. The Superior Court reversed and remanded.[19]

After the Superior Court denied Father's application for reargument, he petitioned this Court for allowance of appeal, which we granted to address the following issue, as phrased by Father:

> What is the effect of a Power of Attorney which is not executed in conformance with the statute and did the Superior Court commit reversible error by reversing the [orphans'] court which held that a trust was void and terminated as it was created by a Power of Attorney which was later declared void ab initio?

---

[18] As noted by the orphans' court, Daughter's argument in support of her law-of-the-case issue is based on the unsupported presumption that the question of the validity of the trust was decided by the order denying the motion to terminate. The law-of-the-case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions **decided** by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (emphasis added). Thus, to trigger this doctrine, the order denying Father's motion to terminate the trust had to decide an open question. Although the order denied Father's motion, it did not explain why Father's motion was denied; this outcome is particularly indecisive since the order was entered apparently in response to Daughter's preliminary objections that in large part raised procedural challenges to the motion. Consequently, there are any number of reasons why the order was denied that have nothing to do with whether the trust is valid. Accordingly, the law-of-the-case doctrine did not preclude the orphans' court from evaluating the validity of the trust.

[19] In a footnote, the court explained that its disposition of the appeal was without prejudice to Father's ability to seek termination of the trust due to fraud or mistake.

*In re Koepfinger*, 278 A.3d 849 (Pa. 2022) (per curiam).  This issue presents a question of law.  "Like all questions of law, our standard of review is de novo, and our scope of review is plenary."  *Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017).

## II.  Parties' Arguments

Father compares this case to the Court's decision in *Glen-Gery Corporation* and the United States Supreme Court's opinion in *Norton, see* supra notes 12 and 13 (summarizing *Glen-Gery Corp.* and *Norton*).  Although these cases do not address the impact of a power of attorney deemed void ab initio, Father, by analogy, argues that they support the proposition that if the initial document, here the POA, is void ab initio, then any document or act flowing from the initial document is then void.  Father's Brief at 15.

As he did in the Superior Court, Father also asserts that, because this matter presents the Court with an issue of first impression, it is appropriate to look to other jurisdictions' case law for guidance.  In this regard, Father primarily analogizes the facts of this case to the facts underlying the aforementioned opinion of the District Court of Appeal of Florida in *Kotsch*, *see* supra note 14 (summarizing *Kotsch*).  While Father concedes that *Kotsch* does not address a power of attorney deemed void ab initio, he asserts that the result of this case should be the same as in *Kotsch*.  Father's Brief at 16 ("While the power of attorney in *Kotsch* was not held void ab initio, the trust was still held void.  A result that should occur in this matter.").

Lastly, Father contends that "Section 5608 and *Vine* do not apply to this matter." *Id.* at 18.  In Father's view, Section 5608 would be triggered only if there were third parties involved in this case that accepted a facially valid power of attorney and then attempted to avoid liability because the power of attorney was, in fact, invalid – a scenario that is not present in this case.  For these reasons, Father asks the Court to reverse the judgment of the Superior Court.

In response, Daughter first contends that the intermediate court accurately concluded that the orphans' court incorrectly stated in its January 24, 2020 order that "[t]he prior determination that the [t]rust was void remained undisturbed by the [o]rder of June 10, 2019."[20]  Daughter's Brief at 12 (quoting Orphans' Court Order, 1/14/2020, at 3).  Daughter highlights that Judge Durkin never addressed the validity of the trust.  Daughter seems now to recognize that the Orphans' Court Opinion conceded a mistake in this regard, but she does not grapple with that court's rejection of her sole substantive argument that Section 5608 validates the trust.

Daughter also maintains that the cases that Father relies upon for his position are inapposite.  As an example, Daughter points out that the issue in *Glen-Gery Corporation* was not the validity of the ordinance at issue, *see* supra note 12; rather, the *Glen-Gery Corporation* Court simply addressed whether challenges to the ordinance were timely pursued, which has nothing to do with this matter.  Concerning *Kotsch*, Daughter argues that the case did not address any issue regarding the validity of a power of attorney.  Instead, the *Kotsch* court unremarkably "determined that the power of attorney in that case did not include the power to create a trust and that the creation of the trust and the transfer of assets into the trust exceeded the scope of the power of attorney as written and executed."  Daughter's Brief at 14-15 (citing *Kotsch*, 608 So.2d at 880).  Here, Daughter argues, the POA expressly included these powers.  *Id.* at 15.  According to Daughter, the other cases cited by Father all concern forgery or fraud, neither of which are implicated in this case.[21]

---

[20]  The orphans' court did not rely on any alleged prior determination of Judge Durkin in its Orphans' Court Opinion, where it expounded upon the reasons it employed in deeming the trust void.

[21]  Daughter does not discuss the High Court's decision in *Norton*.

In addition, Daughter believes that the Superior Court correctly determined that the orphans' court committed reversible error by relying on a previous version of Section 5608 of the Code and *Vine* in ruling that the trust is invalid. To reiterate, the orphans' court relied on the current version of Section 5608 for the conclusion that it does not validate an otherwise invalid trust. Daughter also repeats her argument that Section 5608 of the Code allowed her to rely on the facial validity of the POA and, in good faith, create the trust. Daughter's Brief at 18 n.5 ("It is arguable, although not necessary to decision [sic] in this case, that [Daughter], as agent under the POA, was as entitled as any other third party to rely on the facially valid POA which she was sent by her father's own attorney and pursuant to which, acting in good faith, she established the Trust. *See* 20 Pa.C.S. § 5608(d)."). Daughter does not grapple with the fact that Father is not attempting to hold her liable for the creation of the trust where he is instead asserting that the trust itself is invalid.

Daughter's ultimate position is that, despite the fact that she acted as a purported agent under a void POA in creating the trust, Father's assets should remain in the trust with her as the trustee because she believed that the POA was valid when she formed the trust. For these reasons, and without citation to authority to support the proposition that a trust is valid even if it was created under a power of attorney that never legally existed, Daughter asks that we affirm the Superior Court's judgment.

### III. Analysis

Chapter 56 of the Code addresses powers of attorney. 20 Pa.C.S. §§ 5601-5614. To the extent that our disposition of this appeal requires us to interpret the Code, such a task is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Ordinarily, the best indication of the

General Assembly's intent is found in the plain language of the statute. *Martin v. Commonwealth Dep't of Transp. Bureau of Driver Licensing*, 905 A.2d 438, 443 (Pa. 2006). If the words of a statute are unambiguous, then we may not disregard them under the pretext of pursuing the spirit of the statute. 1 Pa.C.S. § 1921(b).

Given Daughter's arguments in the lower courts and to some extent in this Court, we initially address what impact, if any, Subsections 5608(c) and (d) of the Code have on the issue in this appeal. As noted above, in *Vine*, this Court interpreted a previous version of Section 5608,[22] concluding that it did not provide immunity from liability to a third party that, in good faith, acted upon an invalid power of attorney. Instead, the *Vine* Court held that the Legislature intended the statutory immunity contained in the former version of Section 5608 to be triggered only when a third party, in good faith, acted upon a valid power of attorney. Following our decision in *Vine*, the Legislature amended Section 5608 to its current form.

---

[22] At that time, Section 5608 stated, in relevant part, as follows:

> **(a) Third party liability.--**Any person who is given instructions by an agent in accordance with the terms of a power of attorney shall comply with the instructions. Any person who without reasonable cause fails to comply with those instructions shall be subject to civil liability for any damages resulting from noncompliance. Reasonable cause under this subsection shall include, but not be limited to, a good faith report having been made by the third party to the local protective services agency regarding abuse, neglect, exploitation or abandonment pursuant to section 302 of the act of November 6, 1987 (P.L. 381, No. 79), known as the Older Adults Protective Services Act.

> **(b) Third party immunity.--**Any person who acts in good faith reliance on a power of attorney shall incur no liability as a result of acting in accordance with the instructions of the agent.

20 Pa.C.S. § 5608 (former version).

In so doing, the Legislature struck the provisions of Section 5608 that we interpreted in *Vine* and enacted the following subsections:

**(c) Genuineness.--**A person who in good faith accepts a power of attorney without actual knowledge that a signature or mark of any of the following are not genuine may, without liability, rely upon the genuineness of the signature or mark of:

  (1) The principal.

  (2) A person who signed the power of attorney on behalf of the principal and at the direction of the principal.

  (3) A witness.

  (4) A notary public or other person authorized by law to take acknowledgments.

**(d) Immunity.--**A person who in good faith accepts a power of attorney without actual knowledge of any of the following may, without liability, rely upon the power of attorney as if the power of attorney and agent's authority were genuine, valid and still in effect and the agent had not exceeded and had properly exercised the authority that:

  (1) The power of attorney is void, invalid or terminated.

  (2) The purported agent's authority is void, invalid or terminated.

  (3) The agent is exceeding or improperly exercising the agent's authority.

20 Pa.C.S. § 5608. As previously noted, the Legislature expressly intended to reverse this Court's interpretation of the predecessor to Section 5608. Supra note 10.

Thus, it is abundantly clear that, through the amended version of Section 5608, the Legislature intended to expand protection from liability to persons that accept and rely on powers of attorney. Subsection 5608(c) now protects a person from liability if she, in good faith, accepts a power of attorney and relies on the principal's signature as if it is genuine,

unless the person has actual knowledge that the signature on the power of attorney is not genuine. *Id.* § 5608(c). Turning to Subsection 5608(d), we observe that, while the wording of this provision is disjointed, the intent behind it is clear: Subsection (d) immunizes a person from liability for reliance on a power of attorney and the exercise of the agent's authority pursuant to the power of attorney, except if she had actual knowledge that: (1) the power of attorney is void, invalid or terminated; (2) the purported agent's authority is void, invalid or terminated; or (3) the agent is exceeding or improperly exercising her authority. *Id.* § 5608(d). Therefore, Section 5608 immunizes from liability a person who in good faith relies on a power of attorney, even if the power of attorney is deemed invalid or void.

Section 5608 has no applicability to the instant matter. This action was commenced by Daughter who sought a declaration that the trust she created was valid even though Father later terminated the POA under which she acted as agent; Father asserted that the POA was never valid because of a defect in its notarization. Father did not seek to hold Daughter liable for creating the trust. This case is about the validity of the trust, not Daughter's liability for creating it. The immunity from liability provided by Section 5608 is irrelevant to the issue of the validity of the trust.

The foundational fact in the case is that the POA was void ab initio. It is self-evident that a trust purportedly created under the authority of a null POA is also a nullity. Daughter, as a purported agent under the ineffective POA, had no authority to act on behalf of the purported principal. *See O'Neal by & through Small v. O'Neal*, 803 S.E.2d 184, 189 (N.C. Ct. App. 2017) (holding that, because the power of attorney that a purported agent utilized to transfer the alleged principal's property into trusts was a nullity and of no legal effect, the deeds executed pursuant to that non-existent POA were void ab initio).

This conclusion dovetails with Father's argument by analogy to those cases where an agent acts outside the scope of the authority granted to him by a power of attorney and those where a statute is deemed void ab initio. Regarding the former, Father highlights, among other cases, the decision of the District Court of Appeal of Florida in *Kotsch* upon which the orphans' court relied. As noted,[23] in *Kotsch*, an elderly father executed a power of attorney, naming his son as the agent. Purporting to act in this role, the son set up a trust for his father and placed most of his assets into the trust. Father filed an action seeking a judicial declaration that the trust was void. Because the power of attorney did not empower the son to dispose of his father's property by placing it into a trust, the Florida appellate court held that the trust was void.[24] Thus, if an agent's action taken outside the scope of a power of attorney is void, then, by implication, a purported agent's action taken pursuant to a POA that never legally existed is likewise void.

Relying on the United States Supreme Court's decision in *Norton*,[25] Father suggests, and we agree, that his position is in accord with the "void ab initio doctrine" associated with constitutional law. A statute held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment, and acts taken pursuant to it are also void. *Glen-Gery Corp.*, 907 A.2d at 1037. So too, acts taken under the auspices of a null power of attorney are likewise nullities.

## IV. Conclusion

Here, Judge Durkin concluded that the POA was void ab initio because it was not executed as prescribed by Subsection 5601(b)(3) of the Code. This conclusion rendered

---

[23] *See* supra at note 14.

[24] This holding comports with well-settled principles of Pennsylvania law. *See, e.g.*, *Culbertson v. Cook*, 162 A. 803 (Pa. 1932) (concluding that a power of attorney executed by a company did not authorize the agent of the power of attorney to postpone a lien of the company's mortgage; thus, the Court struck off the postponement of the lien).

[25] *See* supra note 13.

the POA legally non-existent. Consequently, the trust created for Father under the auspices of the non-existent POA is a legal nullity. Thus, contrary to the Superior Court's ruling, the orphans' court correctly concluded that the trust is void. Accordingly, we vacate the judgment of the Superior Court and reinstate the January 24, 2020 order of the orphans' court.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy and Brobson join the opinion.